## ARKANSAS CORPORATION COMMISSION ET AL. *v.* THOMPSON, TRUSTEE.

No. 715.   Argued April 4, 1941.—Decided April 28, 1941.

*Messrs. Joseph M. Hill* and *Leffel Gentry,* Assistant Attorney General of Arkansas, with whom *Messrs. Jack Holt,* Attorney General, and *Henry L. Fitzhugh* were on the brief, for petitioners.

134

*Mr. James M. Chaney,* with whom *Messrs. Thomas T. Railey* and *Harvey G. Combs* were on the brief, for respondent.

*Messrs. Jack Holt,* Attorney General of Arkansas, *Charles T. Coleman* and *Walter G. Riddick* filed a brief on behalf of the State of Arkansas.

*Messrs. David T. Wilentz,* Attorney General of New Jersey, and *Duane E. Minard* filed a brief on behalf of the State of New Jersey, as *amicus curiae,* urging reversal.

MR. JUSTICE BLACK delivered the opinion of the Court.

This case raises questions concerning the right and power of a federal bankruptcy court to revise and re-

determine for state tax purposes the property value of a railroad (Missouri Pacific) in reorganization under § 77 of the Bankruptcy Act, the state (Arkansas) having already determined such value through its own taxing officials and in accordance with the procedure prescribed by valid state legislation.

Over the objections of Arkánsas officials, the District Court sitting in bankruptcy held that it did have such power. 33 F. Supp. 728. The Circuit Court of Appeals affirmed. 116 F. 2d 179. In so holding, both courts relied on § 64 (a) of the general bankruptcy act, 11 U. S. C. § 104 (a) (Supp. 1939), as the source of this power. That section, so far as pertinent here, provides "The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates . . . shall be . . . (4) taxes legally due and owing by the bankrupt to the United States or any State . . . : *Provided*, . . . That, in case any question arises as to the amount or legality of any taxes, such question shall be heard and determined by the [bankruptcy] court . . ."

Petitioners contend that § 64 (a) is in its entirety inconsistent[1] with the aims and purposes of § 77, 11 U. S. C. § 205 (Supp. 1939), and that it therefore has no application here. That question we need not decide. For we are of opinion that the Congressional language giving

---

[1] Section 77 (1) provides: "In proceedings under this section *and consistent with the provisions thereof,* the jurisdiction and powers of the court, . . . and the rights and liabilities of creditors, . . . shall be the same as if a voluntary petition for adjudication had been filed and a decree of adjudication had been entered on the day when the debtor's petition was filed." (Italics supplied.)

Among the federal court decisions cited in briefs supporting the petition as bearing on the issue of inconsistency between § § 64 (a) and 77, either directly or indirectly, are the following: *Lowden* v. *Northwestern National Bank & Trust Co.*, 298 U. S. 160, 164;

to the bankruptcy court power to determine the "amount or legality" of taxes does not mean that the court is given power to redetermine and revise the property value finally fixed by a state under the circumstances revealed by the trustee's petition, even though that value is the basis used in computing the amount of taxes "legally due and owing."

An explanation of the power, functions, and action of the Arkansas Corporation Commission is essential to a clear understanding of this case. That Commission is a state agency created pursuant to state constitutional requirements.[2] It is vested with broad authority in the regulation of railroads, canals, turnpikes, public utilities, motor vehicles, sleeping cars, telephone and telegraph companies, and companies transmitting and distributing gas, oil and electricity.[3] Also, in the administration of the state tax laws the Corporation Commission has general and complete supervision and control over the valuation, assessment and equalization of all property. Before entering upon his duties in the assessment of property, each member of the Commission must subscribe to an oath that he will well and truly value and assess all property required to be assessed.[4] The Commission has full power to summon witnesses and hear evidence, but further, before assessments are finally determined, all persons interested have the right, on written application, to appear and be heard.

---

*In re Chicago, M., St. P. & P. R. Co.,* 27 F. Supp. 685; *City of Springfield* v. *Hotel Charles Co.,* 84 F. 2d 589; *In re A. V. Manning's Sons,* 16 F. Supp. 932; *In re New York, O. & W. Ry. Co.,* 25 F. Supp. 709; *Texas Co.* v. *Blue Way Lines,* 93 F. 2d 593; *Henderson County* v. *Wilkins,* 43 F. 2d 670. And see Finletter, The Law of Bankruptcy Reorganization (1939) pp. 343–344.

[2] Ark. Dig. Stats. (Pope, 1937) § 1930.

[3] *Id.,* §§ 1930–2128.

[4] *Id.,* § 2042.

The Missouri Pacific has been in reorganization under § 77, with respondent as trustee, since 1933. In 1939, as in the preceding years, the railroad's properties were being operated by the trustee. The Commission, after a hearing in which the trustee participated, fixed the value of the railroad's Arkansas property, and levied an assessment for 1939. The trustee's motion for rehearing was heard, considered, and overruled by the Commission. The trustee concedes here that the hearing granted by the Commission was in "full compliance with all the administrative steps required by the Arkansas statute." Under controlling Arkansas law, it is provided that "Within thirty days after the entry on the record of the said Arkansas Corporation Commission of any order made by it, any party aggrieved may file a written motion with any member of such commission or with the secretary thereof praying for appeal from such order to the circuit court of Pulaski County; and thereupon said appeal shall be automatically deemed as granted as a matter of right without any further order."[5] Any party aggrieved by the Circuit Court's decision may then obtain as a matter of right an appeal to the Supreme Court of the state.[6] It is provided by statute that preferential standing on the docket be given to appeals from the Commission to the Circuit Court, and from the Circuit Court to the Supreme Court.

The Commission's final order fixing the value of the railroad's property for tax assessment was entered on December 4, 1939. The trustee did not appeal to the Circuit Court of Pulaski County within thirty days as authorized by Arkansas law, and the assessment of the Corporation Commission thereupon became final. Thus tested by Arkansas taxation legislation, the assessed taxes were, in

---

[5] *Id.*, § 2019.
[6] *Id.*, § 2020.

the language of § 64 (a), "legally due and owing" to the state in the "amount" fixed by the Commission, and were not subject to further judicial review, unless the special circumstance that a taxpayer is in bankruptcy or reorganization places it in a separate tax classification different from that of all other Arkansas taxpayers.

But three months after the expiration of the time allowed by the state for the trustee to appeal from the Commission's order—specifically, on April 11, 1940—the trustee petitioned the bankruptcy court, sitting in Missouri, to determine the "amount or legality" of the Arkansas tax by revising the property value found by the Corporation Commission and upon which the amount was based. The basis of the trustee's petition was that the Commission had made an overassessment, in that after a hearing it had determined the property to be worth far more than its actual value. This argument rested upon a contention that the Commission had overvalued the property by giving "predominant weight . . . to original cost and to cost of reproduction, and wholly inadequate consideration . . . to the market value of the railroad's stocks and bonds and to an enormous reduction in earnings occasioned by general business considerations and to rapid increase of competition from buses, trucks, water and air." The bankruptcy court was asked to find the Commission's tax assessment illegal upon three grounds: (1) The value determined by the Board was greatly in excess of the fair market value of the railroad's property and therefore there was a violation of that section of Arkansas law which provides that the assessment shall be "upon the consideration of what a clear fee simple title thereto would sell for under conditions under which that character of property is usually sold." [7]   (2) The assessment was in violation of § 5 of Article 16 of the Constitution of Arkansas which

---

[7] *Id.,* § 2044.

provides that all property shall be taxed according to its value and that no one species of property from which a tax may be collected shall be taxed higher than another species of property of equal value, and that all values shall be ascertained so as to make the same equal and uniform throughout the state. (3) The alleged excessive valuation fixed by the Commission was in violation of the Fourteenth Amendment of the Constitution of the United States.

It is thus obvious that the trustee's petition, which the bankruptcy court refused to dismiss, rested entirely upon the assumption that § 64 (a) (4) gave the bankruptcy court power to hold a completely new hearing in order to set its own value on the property, regardless of the value fixed by the state through its expert and specially constituted quasi-judicial agency.[8]

But we do not so interpret § 64 (a) (4). What § 64 (a) (4) relates to is "taxes legally due and owing by the bankrupt." And what that section further provides is that "in case any question arises as to the amount or legality of any taxes, such question shall be heard and determined by the court; . . ." Nothing in this language indicates that taxpayers in bankruptcy or reorganization are intended to have the extraordinary privilege of two separate trials, one state and one federal, on an identical issue of controverted fact—the value of the property taxed. Manifestly, whether or not taxes are "legally due and owing" to a state depends upon the valid laws of that state. Ad valorem taxes depend upon a determination of value. The governmental function of fixing the value for tax purposes has rarely, if ever,

---

[8] Among the lower federal court decisions discussing the power of bankruptcy courts under § 64 (a) (4) are: *In re Gould Mfg. Co.,* 11 F. Supp. 644; *In re 168 Adams Building Corp.,* 27 F. Supp. 247, affirmed, 105 F. 2d 704; *In re Schach,* 17 F. Supp. 437, 439; *In re Lang Body Co.,* 92 F. 2d 338; *Henderson County* v. *Wilkins,* 43 F. 2d 670.

been a judicial function. The "legality" of the action of Arkansas in entrusting the determination of value to its Corporation Commission is not challenged here, as of course it could not be. If the Commission properly found the value of the property, the "amount" of the taxes is not in question. For it is not asserted that the Commission made an improper arithmetical computation in applying the legal tax rate to the determined property value. It is in this respect, as well as with regard to the dissimilar duties and functions of the state administrative agencies involved, that this case differs from that of *New Jersey* v. *Anderson*, 203 U. S. 483, upon which the trustee here strongly relies. In that case, as here, the relevant provision of § 64 (a) was relied on as authorizing the bankruptcy court to determine the "amount or legality" of taxes. New Jersey had imposed a franchise tax upon the outstanding—not the authorized—capital stock of corporations, varying in proportion to the number of shares. A state agency, without a hearing, imposed a tax on the $40,000,000 authorized stock of the company involved, when in fact the company had only $10,000,000 of such stock outstanding. This Court said: "It may well be doubted whether the board had power to tax any other stock [except that outstanding]. But be that as it may, section 64a specifically provides that in case any question arises as to the amount or legality of taxes, the same shall be heard and determined by the court, with a view to ascertaining the amount really due. We do not think it was the intention of Congress to conclude the bankruptcy courts by the findings of boards of this character, and that the claim should have been upon the basis of the capital stock actually outstanding." But in that case the trustee argued in his brief before this Court that under controlling New Jersey law "the assessors acted ministerially, not judicially," their "determination was merely

computation," and their actions exceeded their statutory authority.[9]

The Arkansas Corporation Commission, however, does not act ministerially. On the contrary, it is a quasi-judicial agency entrusted with wide responsibilities in connection with the general tax system of the state. Upon it the state relies for the hearing and determination of matters essential to the maintenance and fair functioning of a uniform tax system. For reasons deemed suitable to it, the state has elected to confide this duty to the same agency which has power to exercise state-wide regulatory supervision over public utilities, including railroads. The difficulties in fixing railroad valuations are well known, and have been many times adverted to by this Court.[10] The Corporation Commission has been chosen by Arkansas as the ultimate guardian of the rights of the state and its taxpayers, subject only to that judicial review provided for by the state. "The State has confided those rights to its protection and has trusted to its honor and capacity as it confides the protection of other social relations to the courts of law." *Chicago, B. & Q. Ry. Co.* v. *Babcock*, 204 U. S. 585, 598.

If the trustee had availed himself of his right of appeal to the courts of Arkansas, with an ultimate right of appeal to this Court for final determination of federal questions, it is difficult to believe that it would now be seriously argued that Congress, by § 64 (a) (4), in-

---

[9] In advancing this argument counsel called attention to the case of *People's Investment Co.* v. *State Board of Assessors*, 66 N. J. L. 175; 48 A. 579, in which the Court had said that it was beyond the jurisdiction of the tax agent to levy a tax on any but the outstanding capital stock. Counsel also relied on *Arimex Copper Co.* v. *State Board of Assessors*, 69 N. J. L. 121; 54 A. 244.

[10] E. g., *Nashville, C. & St. L. Ry.* v. *Browning*, 310 U. S. 362, 370; *Rowley* v. *Chicago & N. W. Ry. Co.*, 293 U. S. 102, 109, and cases cited.

tended to impose upon the bankruptcy court the unusual power and delicate duty of trying out afresh the facts found by the state with relation to the value of property. And there is no more reason to assume that Congress intended that the bankruptcy court should fail to give respect to an unappealed determination of value made by the Arkansas Corporation Commission. Bankruptcy and reorganization proceedings today cover a wide area in the business field. But there is nothing in the history of bankruptcy or reorganization legislation to support the theory that Congress intended to set the federal courts up as super-assessment tribunals over state taxing agencies. The express legislative purpose of Arkansas to move towards a more nearly uniform and fairly distributed tax burden through relying on supervision by a single agency could be in large part frustrated by the construction of the Bankruptcy Act for which the trustee here contends. Section 64 (a), thus construed, would tend to obstruct, and not to facilitate, the enforcement of state tax laws.[11] Nothing in the language of the Act requires such a construction. And the policy of revising and redetermining state tax valuations contended for by the trustee would be a complete reversal of our historic national policy of federal non-interference with the taxing power of states.

For the reasons given, it is our opinion that the District Court should have dismissed the trustee's petition.

*Reversed.*

Mr. Justice Douglas took no part in the consideration or decision of this case.

---

[11] *Boteler* v. *Ingels,* 308 U. S. 57, 61; *Healy* v. *Ratta,* 292 U. S. 263, 270; *Pennsylvania* v. *Williams,* 294 U. S. 176, 185. Cf. Bankruptcy Act of 1867, § 28 (5), 14 Stat. 531; Act of June 18, 1934, 28 U. S. C. § 124 (a), 48 Stat. 993.