## In re CENTRAL R. CO. OF NEW JERSEY.

### Appeals of STATE OF NEW JERSEY et al.
### Nos. 8095, 8171.

Circuit Court of Appeals, Third Circuit.

Argued Nov. 20, 1942.

Decided May 27, 1943.

Rehearing Denied July 15, 1943.

Joseph Weintraub, of Newark, N.J., (David T. Wilentz, Atty. Gen., for State of New Jersey, Joseph Lanigan, of Trenton, N.J., and Milton B. Conford, of Newark, N.J., on the brief), for State of New Jersey.

Charles Hershenstein, of Jersey City, N. J. (Charles A. Rooney, of Jersey City, N. J., on the brief), for City of Jersey City.

Alexander H. Elder, of New York City (Shelton Pitney, of Newark, N.J., and Howard L. Kern, of New York City, on the brief), for debtor.

Before MARIS, JONES, and GOODRICH, Circuit Judges.

MARIS, Circuit Judge.

The Central Railroad Company of New Jersey operates an interstate railroad in part within the State of New Jersey. It has been in reorganization in the District Court for the District of New Jersey under section 77 of the Bankruptcy Act, 11 U.S. C.A. § 205, since October 30, 1939. The State of New Jersey filed proofs of claim for property taxes assessed against the debtor for the years 1932 to and including 1939 and for interest thereon. Taxes for 1940 were not included in these claims since they accrued when the debtor was in the process of reorganization and were therefore an administration expense. In the tax claims, which were executed and verified by the State Comptroller, the Attorney General was designated as the attorney authorized to represent the state. The State of New Jersey was the claimant. Issues raised by the debtor and its trustees as to these claims were referred to a special master, but by the order here appealed from this reference was revoked.

On July 22, 1941 a railroad tax settlement act (P.L., 1941, chap. 290) became effective. The New Jersey legislature therein offered to settle the state's tax claims for the years 1932 to and including 1940 against all delinquent railroad companies, including the debtor, at a sum equal to the principal amount of the claim, payable over a period not to exceed twenty years and to waive the bulk of interest penalties which had accrued. This offer could be accepted only upon condition that the debtor waive its rights to appeal from all assessments prior to 1941 and discontinue pending tax litigation. In addition the debtor had to file a written undertaking with the Comptroller in a form to be approved by the Attorney General. The trustees of the debtor, having procured an order from the district court on August 8, 1941, authorizing them to accept the offer upon the terms and conditions set forth in the statute, tendered the required documents and checks. The Attorney General declined to approve them and the Treasurer declined to accept any tenders.

On September 4, 1941, the Attorney General filed a civil information suit in the New Jersey Court of Chancery to contest the constitutionality of the tax settlement act, naming the treasurer of the state as sole defendant. That suit is still pending and undecided. Subsequently the legislature passed a second railroad tax settlement act, effective May 21, 1942, P.L., 1942, chap. 241, N.J.S.A. App. A:4–7.1 et seq. This Act relieved the Attorney General of the duty and right to approve the form of the settlement documents. It waived all interest penalties. Acceptance of the offer of settlement had to be on or before June 15, 1942, and had to be accompanied by the stipulated documentary waivers, payment in full and without protest of a franchise tax for 1941 and by a first payment upon the principal of the tax.

On May 21, 1942, the effective date of the second tax settlement act, the Attorney General filed an amended civil information in his pending chancery suit so as to put at issue the constitutionality of the second act, and the same day upon petition of the Attorney General the Court of Chancery enjoined the Treasurer from accepting any documents or payments made in reliance upon the terms of the two tax settlement acts. This restraining order is extant and the constitutionality of the acts is still undetermined by the Court of Chancery.

On June 2, 1942, the trustees petitioned the district court for instructions as to their compliance with the terms of the second tax settlement act. At the same time they obtained an order upon the Attorney General, the Comptroller and the Treasurer to show cause why the amount of the tax claims against the debtor for the years 1932 to 1939, both inclusive, should not be fixed at the principal amount of taxes alleged to be due, payable as prescribed by the second tax settlement act, and the interest penalties be disallowed. After hearing upon the petition and order to show cause the district court entered Order No. 163, paragraphs 4, 5 and 6, of which read as follows:

"4. That the Trustees of the Debtor should not be required to comply with Chapter 241 of the Laws of New Jersey of 1942 without a simultaneous order by this Court adjudicating the amounts for which the aforesaid claims of the State of New Jersey, for the years 1932 to 1939, inclusive, and the balances in dispute for 1940 should be allowed.

"5. That, since a determination must be made prior to June 15, 1942, as to whether or not the Trustees should accept the provisions of Chapter 241 of the Laws of 1942, since, further, it is not possible for the Court in the short time available before that date to try the issues of fact raised by Claims Nos. 34 to 38, inclusive, and the objections filed thereto and determine accurately the amounts now legally due; and since the Court, as a matter of law, has concluded that the offer of settlement officially tendered by the claimant through the enactment of Chapter 241 is a valid and subsisting offer made to carry into effect a public policy set forth in said act, at least so far as a debtor railroad in reorganization under the Bankruptcy Act is concerned, the Court hereby adjudicates the amount for which said claims of the State of New Jersey against the Debtor's estate (including the balances in dispute for 1940) should be and they are hereby allowed as follows:

| Name of Company | Amount of Claim Allowable |
|---|---|
| The C. R. R. Co. of N. J., as Lessee of Ogden Mine R. R. Co. | $ 5,220.69 |
| The C. R. R. Co. of N. J., as Joint Operator of The New York & Long Branch R. R. Co. | 318,305.30 |
| The C. R. R. Co. of N. J., as Lessee of The Dover & Rockaway R. R. Co. | 13,636.37 |
| The C. R. R. Co. of N. J. as Joint Operator of Bay Shore Connecting R. R. Co. | 5,528.40 |
| The C. R. R. Co. of N. J., Debtor | 13,438,669.19 |

payable in the manner, at the times, with the interest and upon the terms and conditions prescribed by said Chapter 241.

"6. The Trustees accordingly should be and they are hereby instructed and directed on or before June 15, 1942 to comply and on behalf of themselves and their successors to agree to comply in the future in all respects with said Chapter 241 and to make the payments therein required to be made—all in the manner, at the times, with the interest and upon the terms and conditions therein prescribed; and this Court hereby adjudges that upon full compliance as aforesaid Claims Nos. 34, 35, 36, 37 and 38 will have been fully satisfied and discharged."

The concluding paragraph of the order reads: "Nothing in this order contained shall be construed as passing upon the validity or invalidity of Chapter 290 of P.L.1941 or Chapter 241 of P.L.1942, attacks upon which are now pending in the State Courts."

1. *The Motion to Dismiss the Appeal from Order No. 163*

The Attorney General appealed in the name of the State of New Jersey from Order No. 163. This appeal was docketed in this court as No. 8095. The trustees moved to dismiss and on October 7, 1942, this Court denied the motion without opinion. The trustees have, however, petitioned for rehearing of their motion to dismiss the appeal. They contend that the Attorney General lacks authority to prosecute the appeal either in his own name or in the name of the State of New Jersey, that the state by its Comptroller had consented to the order and that the issue is moot. We find no merit in any of these contentions.

Among the statutory powers and duties of the Attorney General of the State of New Jersey set out in R.S.N.J. 52:17-2, N.J.S.A. 52:17-2, are the following:

"The attorney general shall, when not incompatible with his other public duties:

\* \* \* \* \*

"g. Attend generally to all matters in which the state is a party or in which its rights and interests are involved;

"h. Act as adviser or counsel for all state boards, commissions or other state officials, and, in connection with such assistants as may be employed in his department, be the sole legal adviser, attorney or counsel thereof and represent them in all suits or actions of any kind that may be brought for or against them in any courts of this state."

By Order No. 163 the district court has adjudicated the amounts payable by

the debtor to the state based upon the assumption that the tax settlement acts are valid. These same acts are now being challenged by the Attorney General's suit in the New Jersey Court of Chancery. If they are declared unconstitutional the adjudication by Order No. 163 will have deprived the state of its right to immediate collection of the whole of the principal and to interest upon the delinquent taxes. It is clear that the "rights and interests" of the state are directly involved since the order under appeal purports to determine the amount of the tax for which recovery may be had and to postpone the period of collection. It follows that if Order No. 163 was erroneous it was not only the right but the duty of the Attorney General to appeal from it.

■ The trustees call attention to Chapter 391 of the New Jersey Laws of 1941 (p. 1012)[1] and urge that that act expressly abrogates the powers and duties of the Attorney General in all proceedings involving the tax settlement acts. We do not so construe the act. By its very terms it is restricted to the proceedings in the Court of Chancery or in any other court to which the Chancery proceedings are brought by appeal or otherwise. The need for such an act is self-evident. Since the Attorney General is the plaintiff in the Chancery proceedings it was necessary to make provision for some other state officer to conduct the defense. The legislature empowered the State Treasurer to do so. It does not follow that the Treasurer has been substituted to take over the conduct of all actions arising out of the tax settlement acts in which the rights and interests of the state are involved.

■ It is suggested by the trustees that whatever might be the power of the Attorney General himself, the counsel who did in fact appear to argue the issues in the District Court on behalf of the State of New Jersey had absolutely no standing to do so. The Attorney General designated Joseph Weintraub as his special assistant to appear in the District Court and the Circuit Court of Appeals in the matter of the Central Railroad Company of New Jersey. Authority for such a designation is contained in R.S.N.J. 52:17-7, N.J.S.A. 52:17-7, which provides, inter alia, "There shall be such other clerks and assistants in the office of the attorney general as the business of the department shall require and the attorney general shall appoint; and he may, whenever any exigency shall require, employ special or local counsel." The present controversy would appear to be just such an exigency as was contemplated by the act.

■ The trustees next contend that no appeal from the order may be taken by the state because the Comptroller who executed, verified and filed the proofs of claim on behalf of the state consented to the entry of the order. The Comptroller is given authority by R.S.N.J. 52:19-10, N.J.S.A. 52:19-10, to "a. Superintend the collection of the revenue; b. Take general charge and supervision of all rights, interest and property of the state; [and] c. Institute and direct prosecution against delinquent officers of the revenue, and for just claims and debts due to the state." In addition to these general duties R.S.N.J. 52:19-15, N.J.S.A. 52:19-15, provides that "The Comptroller shall cause suit to be instituted in any competent court of this or any other state for the recovery of any moneys due to the state or any of its institutions, departments, commissions or officers. The suit shall be in the name of the 'State of New Jersey' as plaintiff."

It will thus be seen that the litigant in the court below was the state itself and not the Comptroller or the Attorney General. The rôle of the Comptroller is that of the fiscal officer to whom is entrusted the duty of tax collection. Because he is in possession of the data supporting the state's claim to taxes it is his function to do all that is necessary for collection of the claim. When, in his judgment, collection cannot be made without suit it becomes his duty to

---

[1] "1. The State Treasurer is hereby authorized and directed to defend the proceedings now pending in the Court of Chancery, entitled 'Between David T. Wilentz, Attorney-General of New Jersey, Informant, and William H. Albright, State Treasurer, Defendant,' both in said court and in any other courts before which said proceedings may come by appeal or otherwise, and his action heretofore taken in the defense of said proceedings is hereby ratified and confirmed.

"2. The State Treasurer is hereby authorized to employ counsel other than and independent of the Attorney-General to advise and represent him in said proceedings, and his action in heretofore employing such counsel and associate counsel for that purpose is hereby ratified and confirmed."

direct the prosecution of the claim in the courts. At this stage of tax collection the duty of the fiscal officer is to call upon the state's law officer, the Attorney General, to proceed with the prosecution of the claim in the courts. Since both the fiscal and the law officer at this point combine to act for and on behalf of the litigant, the state, a compromise, settlement or abandonment of the state's interests by one of them against the honest judgment of the other is unallowable. It follows that the failure of the Comptroller, the state's fiscal officer, to object to the entry of Order No. 163 and indeed even his implied consent to its entry cannot operate to deprive the state through its law officer, the Attorney General, of the right to object to such order. We are, therefore, of the opinion that the state did not consent to the entry of Order No. 163 and consequently is not for that reason precluded from taking this appeal.

■ The final contention that the issue between the state and the trustees is moot by reason of the tender to the Treasurer of a payment pursuant to Order No. 163 must also fail. The tender though acknowledged was not accepted by the Treasurer and consequently was without legal effect. In fact the Treasurer was powerless to accept the tender by reason of the injunction issued by the Court of Chancery. We adhere, therefore, to our order of October 7, 1942, denying the motion to dismiss and accordingly deny the trustees' petition for rehearing of that motion.

## 2. The Merits of the Appeal from Order No. 163.

We turn next to the merits of the Attorney General's contentions upon this appeal. They are that the District Court should not have passed upon the constitutionality of the railroad tax settlement acts, that it should have afforded the state a fair hearing with opportunity to present arguments as to the unconstitutionality of the tax settlement acts and that the District

Court was without jurisdiction to adjudicate as to state taxes.[2] Because of our conclusions upon the first two contentions it will be unnecessary for the purpose of this appeal to consider the third.

■ In recent years the Supreme Court has ruled that though a federal court may have jurisdiction to pass upon the meaning and effect to be given to a state statute it is, in the exercise of a wise discretion, appropriate for it to stay its hands in the absence of a showing that the remedy sought is not readily obtainable in the state courts which are the final arbiters of the question. Railroad Commission v. Pullman Co., 1941, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971. Where the issue is actually in litigation in the state courts the Supreme Court has said: "Considerations of delay, inconvenience, and cost to the parties, which have been urged upon us, do not call for a different result. For we are here concerned with the much larger issue as to the appropriate relationship between federal and state authorities functioning as a harmonious whole." Chicago v. Fieldcrest Dairies, 1942, 316 U.S. 168, 172, 173, 62 S.Ct. 986, 86 L.Ed. 1355. Both tax settlement acts were being attacked as unconstitutional in the state Court of Chancery at the very time the trustees' petition requested the District Court to adjudicate that the state's tax claims should be reduced to the amounts fixed in the second tax settlement act. It would, therefore, have been appropriate, in the exercise of a wise discretion, for the District Court to have stayed its hand until the state court had determined whether the tax settlement acts were valid or a nullity.

The trustees take the position that the Attorney General did not submit the issue of the constitutionality of the tax settlement acts to the District Court[3] and that the court refrained from passing upon this issue. The record shows the fact to be otherwise. In his affidavit filed in response to the trustees' order to show cause the Attorney General contended that the Dis-

---

[2] In Arkansas Corp. Commission v. Thompson, 1941, 313 U.S. 132, 61 S.Ct. 888, 85 L.Ed. 1244, the Supreme Court left the question open whether a court in which railroad reorganization proceedings under Section 77 are pending has jurisdiction by virtue of Section 64, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 104, sub. a, to adjudicate as to state taxes.

[3] Whether the issue of unconstitutionality was in fact raised has especial significance by reason of the opinion in Chicot County Drainage Dist. v. Bank, 1940, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329, in which failure to do so was held to estop the parties from raising it in a later proceeding.

trict Court should not determine the constitutionality of the state statutes but should await determination of that issue by the state court in which the proceedings were then pending. However, he also averred: "I hereby reassert that Chapter 290 of the Laws of 1941, as amended by Chapter 241 of the Laws of 1942, violates the said constitution of the State of New Jersey for the reasons set forth in the supplemental information." He thus not only urged the impropriety of the court's exercising its jurisdiction but in the alternative put the constitutionality of the settlement acts at issue.

The judge of the District Court, during the course of the argument and even in the order, stated that he had no intention to, would not and had not passed upon the constitutionality of the acts. It is clear, however, that the judge did exactly what he disclaimed doing. He adjudicated that the debtor owed $13,438,669.19, that it need not make immediate payment but could do so in instalments over a period of years and that it owed no interest penalties. This adjudication was made upon the premise, which the District Court termed an assumption, that the railroad tax settlement acts are valid. The adjudication is absolute, however, and is in no manner conditional upon the final outcome of the suit in the state court. Should the state court determine that the acts are unconstitutional the State of New Jersey will sustain a loss of $10,101,520.97 in interest as well as the loss of the use of the principal of the taxes for a period of twenty years.

■ The cornerstone of the defense to an adjudication of the state's claims upon the basis of the terms of the tax settlement acts is that the acts are unconstitutional. Before making such an adjudication the opportunity for a hearing and argument upon that issue should have been accorded the Attorney General. The right to notice and a hearing is one of ancient origin[4] and by the due process clauses of the 5th and 14th amendments has been safeguarded to all against deprivation by the federal government and the states, respectively.

The fact that the state had notice and appeared is not sufficient to satisfy the requirement of due process. It must also have been afforded an opportunity to be heard. Mr. Justice Field, in Windsor v. McVeigh, 1876, 93 U.S. 274, pages 277, 278, 23 L.Ed. 914, said: "That there must be notice to a party of some kind, actual or constructive, to a valid judgment affecting his rights, is admitted. Until notice is given, the court has no jurisdiction in any case to proceed to judgment, whatever its authority may be, by the law of its organization, over the subject-matter. But notice is only for the purpose of affording the party an opportunity of being heard upon the claim or the charges made; it is a summons to him to appear and speak, if he has any thing to say, why the judgment sought should not be rendered. A denial to a party, of the benefit of a notice would be in effect to deny that he is entitled to notice at all, and the sham and deceptive proceeding had better be omitted altogther. It would be like saying to a party: appear, and you shall be heard; and, when he has appeared, saying: your appearance shall not be recognized, and you shall not be heard."

■ We conclude that since the District Court passed upon the constitutionality of the tax settlement acts without giving the parties a hearing upon that question its order, No. 163, must be reversed.

### 3. The Appeal from Order No. 171.

■ Entry of Order No. 171 and the appeal therefrom by the state and the City of Jersey City which was docketed in this court as No. 8171 arose in the following manner: The State Board of Tax Appeals by decision purporting to be dated May 26, 1942, ordered a revision of the debtor's property valuation which would result in an increase of $126,000 in the debtor's taxes for 1939 and by decision purporting to be dated June 2, 1942, dismissed the debtor's appeal from the Tax Commissioner's assessment for 1939. The trustees were notified of these decisions by letter dated June 15, 1942. Judgments were signed and entered June

---

[4] In The Protector and the Town of Colchester, Style 447 (1655); 82 Eng. Repr. 850, Roll, Chief Justice, said in reference to the removal of the recorder by the authorities without a hearing: "He ought to be heard what he could say for himself, else how could it be known whether there were just cause to remove him or no, and it is very hard to deprive one of his freehold without hearing him. * * * You ought to have convented him before you put him out, to hear what excuse he could make for his absence, otherwise how could you know whether he had just cause or not for his absence."

30, 1942, which was after the entry of Order No. 163 and the attempted compliance by the trustees. The trustees obtained from the district court an order upon the Comptroller, the Treasurer and the Attorney General to show cause why the judgments of the State Board of Tax Appeals should not be declared null and void. After hearing the district court entered Order No. 171. It found that the debtor's tax liability for 1939 had been definitely fixed by Order No. 163 and that by full compliance therewith the state's claim would be fully satisfied and discharged and that the trustees should not seek a review in the state court of the State Board's decision. Since, as we have found, Order No. 163 was erroneous, Order No. 171, which is predicated entirely upon the theory that the 1939 tax liability of the debtor was finally adjudicated in Order No. 163, is likewise erroneous and must be reversed.

The trustees also moved to dismiss the appeal from Order No. 171. For the reasons already stated the motion must be denied as to the Attorney General. In view of the reversal of Order No. 171 upon the appeal of the Attorney General it is unnecessary for us to pass upon the right of the City of Jersey City to maintain the appeal.

One final point must be noticed. Order No. 163 authorized the trustees of the debtor to comply with the tax settlement acts by executing and filing the documents and making the payments therein required. Since the law directed that these steps be taken on or before June 15, 1942, it is vitally important to the debtor, in case the constitutionality of the tax settlement acts is ultimately sustained, that the tenders made by the trustees prior to that date pursuant to the directions of Order No. 163 be not invalidated by the reversal of that order. Accordingly so much of paragraphs 6 and 7 of Order No. 163 as authorizes the trustees to comply with the requirements of the tax settlement acts will not be disturbed. Since the injunction of the Court of Chancery has prevented the State Treasurer from accepting the tenders made by the trustees the District Court may authorize them to be withdrawn in the future if and when the acts are found to be invalid.

Order No. 163, insofar as it determines the tax liability of the debtor to the State of New Jersey for the years 1932 to 1939, inclusive, and the validity of the railroad tax settlement acts, and Order No. 171 are reversed and the cause is remanded with directions to the District Court to await the determination by the Court of Chancery of the State of New Jersey of the constitutionality of the railroad tax settlement acts, unless it finds that delay which may be harmful to the debtor and its creditors may result, in which event it may proceed itself to hear and decide the constitutional issue.