### In re BOWEN.

### No. 8237.

Circuit Court of Appeals, Third Circuit.
Argued May 20, 1943.

Decided Sept. 2, 1943.

Writ of Certiorari Denied Jan. 3, 1944.

See 64 S.Ct. 430.

Homer R. Miller, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and Samuel H. Levy, Sp. Assts. to Atty. Gen., and Gerald A. Gleeson, U. S. Atty., and J. Barton Rettew, Jr., Asst. U. S. Atty., both of Philadelphia, Pa., on the brief), for appellant.

Herman H. Krekstein, of Philadelphia, Pa. (David Getz, of Allentown, Pa., and Herbert S. Leman, of New York City, on the brief), for appellee.

Before BIGGS, GOODRICH, and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

On August 12, 1933, the Bureau of Internal Revenue made an assessment against Bowen for income taxes for the year 1926, which, with accrued interest, amounted to over twenty-one thousand dollars. Notice of the Government's lien for this tax was duly filed during the following October. Later the Bureau of Internal Revenue made an assessment against Bowen and others for distilled spirits taxes on alcohol manufactured in December, 1926, in the amount of over thirteen thousand dollars and notice of this tax lien was duly filed during the same month. In September, 1935, one Henry Baker obtained a judgment in a state court against Bowen in the amount of approximately eighty thousand dollars. which, since it was subsequent in date to both tax liens, was inferior to them. It appears that Bowen's principal asset, in fact the only one upon which as a practical matter the above liens could attach, was a piece of real property with the build--

ing thereon located in Allentown, Pennsylvania.

In December, 1938, Baker, in compliance with Treasury Decision 4446, filed an application with the appropriate collector of internal revenue for certificates of discharge of the tax liens on the Allentown property pursuant to § 3674(b)[1] of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 3674(b). On March 10, 1939, an investigation having been made, the Commissioner authorized the collector to issue certificates of discharge and such certificates were issued and filed of record on April 14, 1939. For the discharges of both tax liens Baker paid $150.

Seven months later, on November 8, 1939, Bowen filed a voluntary petition in bankruptcy, was subsequently adjudicated a bankrupt, and in August, 1940, the Allentown property was sold at public sale by the trustee in bankruptcy for $457,500, less broker's commission.

The referee's schedule of distribution shows that if the Government's tax liens are given priority they will be satisfied in full and that the lien of Baker's judgment will be satisfied only in part, but that if they are not given priority, Baker's judgment will be satisfied in full and nothing will be available to satisfy the tax liens. No parties other than the United States and Baker appear to have any interest in the funds which resulted from the sale of the property.

After the property was sold the United States filed a petition with the referee alleging, inter alia, that the Commissioner in authorizing the discharges of the tax liens had been misled by Baker both as to the value of the property and as to the actual amount of the indebtedness due on various prior judgment liens upon it. Baker answered, and, after a hearing, the referee found that Baker in his application for certificates of discharge of the tax liens had made incorrect and incomplete statements and had failed to divulge information in his possession. This, the referee

found, induced the Government to discharge its liens and amounted to "constructive fraud." In consequence the referee ordered that the discharges of the Government's tax liens be stricken off and the liens reinstated; that its claims for both the income and distilled spirits taxes be "impressed as a lien upon the funds in the hands of the trustee in bankruptcy", and that the amounts thereof be paid out of said funds in the order of their priority.

On petition for review the district court concluded that the referee was without jurisdiction to set aside the certificates of discharge of the Government's liens for taxes and therefore considered it unnecessary to express any opinion upon what it called the "merits" of the controversy. Accordingly it reversed the order of the referee and directed that the funds in the hands of the trustee be distributed without regard to the tax liens. On this appeal to us, then, the only question presented is whether a court of bankruptcy has jurisdiction to set aside certificates discharging liens for federal taxes when such discharges have been fraudulently obtained.

Section 3675 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 3675, provides that "A certificate of release or of partial discharge issued under this subchapter shall be held conclusive that the lien upon the property covered by the certificate is extinguished." Construing this section, the district court concluded that it was the intention of Congress to make a collector's certificate of release or partial discharge final and conclusive under all circumstances, even when such a certificate had been fraudulently obtained. We do not agree.

We may concede that by the section Congress clearly intended to provide that no court should review either the Commissioner's determination of the value of the whole or any part of property subject to a lien for taxes, or his determination of the amount which must be paid to the collector for a discharge of such a

---

[1] "Part payment. Subject to such regulations as the Commissioner, with the approval of the Secretary, may prescribe, the collector charged with an assessment in respect of any tax may issue a certificate of discharge of any part of the property subject to the lien if there is paid over to the collector in part satisfaction of the liability in respect of such tax an amount determined by the Commissioner, which shall not be less than the value, as determined by him, of the interest of the United States in the part to be so discharged. In determining such value the Commissioner shall give consideration to the fair market value of the part to be so discharged and to such liens thereon as have priority to the lien of the United States."

lien, but we cannot believe that by it Congress intended to go further and provide that the Government should be powerless to protect itself even in the event that its collector had been induced by fraud to discharge a valid tax lien. It seems to us that if Congress had intended to provide that the Government should be remediless against the perpetrator of a fraud upon it and thereby create an exception to the thoroughly well established rule that fraud renders transactions which it induces voidable, it would have said so in clear and unmistakable terms. In the absence of such terms we are of the view that Congress in the above section did not intend to tie the Government's hands under the circumstances here disclosed.

The case of Arkansas Corporation Commission v. Thompson, 313 U.S. 132, 61 S.Ct. 888, 85 L.Ed. 1244, upon which the district court principally relied, does not seem to us to militate against this view. In it the Supreme Court was not concerned with any question of fraud nor was it concerned with the above or any other section or sections of the Internal Revenue Code. It was concerned with the question of the power of a federal bankruptcy court to revise and redetermine for state tax purposes the value of a railroad in reorganization under § 77 of the Bankruptcy Act, 11 U.S.C.A. § 205, the state having already determined such value through its own taxing officials in accordance with the procedure prescribed by valid state legislation, and the trustee in bankruptcy for the railroad having failed to take the appeal allowed by state law from the final order of the state taxing officials fixing the value of the railroad's property. This is obviously a different situation from the one presented on the appeal before us. But the district court concluded that the rationale of the Supreme Court's decision to the effect that a court of bankruptcy lacked power under § 64(a) of the general bankruptcy act, 11 U.S.C. § 104(a), Supp. 1939, 11 U.S.C.A. § 104, [2] to revise a state agency's final determination of value for state tax purposes applies in the instant case. Its argument is that if a court of

bankruptcy is without jurisdiction to review action taken by a taxing authority in assessing a tax, it is without jurisdiction to review action taken by such an authority in discharging a tax lien.

The case cited supports the conclusion that there can be no judicial review of the Commissioner's determination of the value of property subject to a governmental lien for taxes, or his determination of the amount of the payment required for the discharge of such a lien. But we do not believe that either the holding or any of the language of the court in the Arkansas Corporation Commission case can be expanded to support the view that no court is open to the Government in the event that it has suffered the loss of a lien for taxes by reason of a fraud perpetrated upon it.

█ The question remains as to the appropriate court in which the Government may pursue its remedy. We are of the view that the relief sought can be accorded by a court of bankruptcy.

The property subject to the liens has been sold and its proceeds are awaiting distribution in the hands of the representative of the appropriate court of bankruptcy. But distribution cannot be ordered without a determination both of the persons entitled thereto and of their respective shares. To make this latter determination the order of priority of the liens must be established, and this question of priority necessarily raises the question of the validity of the discharges of the Government's liens. Under these circumstances we entertain no doubt that § 2, sub. a(7) of the Bankruptcy Act, 52 Stat. 843, 11 U.S. C.A. § 11, sub. a(7), which confers jurisdiction upon courts of bankruptcy to "Cause the estates of bankrupts to be collected, reduced to money and distributed, and determine controversies in relation thereto," gives such a court jurisdiction to hear and determine the instant petition filed on behalf of the United States.

The decree of the district court is reversed and the case[b] is remanded for further proceedings not inconsistent with this opinion.

---

[2] This section, so far as the Supreme Court considered it pertinent to the case before it, provides: "The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates * * * shall be * * * (4) taxes legally due and owing by the bankrupt to the United States or any State * * *: Provided, * * * That, in case any question arises as to the amount or legality of any taxes, such question shall be heard and determined by the [bankruptcy] court * * *."