## COMMONWEALTH OF PENNSYLVANIA v. AYLWARD.

### No. 13266.

Circuit Court of Appeals, Eighth Circuit.

April 11, 1946.

---

2 L. & E. Stirn, Inc. v. Com'r, 2 Cir., 107 F.2d 390; Lloyd-Smith v. Com'r, 2 Cir., 116 F.2d 642; Com'r v. Sisto F. Corp., 2 Cir., 139 F.2d 253.

A. J. Granoff, of Kansas City, Mo. (J. M. Meyerhardt, of Kansas City, Mo., on the brief), for appellant.

J. L. Milligan and John C. Grover, both of Kansas City, Mo., for appellee.

Before GARDNER, WOODROUGH, and JOHNSEN, Circuit Judges.

GARDNER, Circuit Judge.

United Funds Management Corporation filed its voluntary petition in bankruptcy on September 30, 1942, and was duly adjudged a bankrupt on October 1, 1942. On December 28, 1942, the Commonwealth of Pennsylvania filed its claim for franchise and corporate income taxes for the years 1939, 1940, 1941 and 1942, claiming priority in payment, and later, on October 20, 1943, it filed an amended and substituted claim in the sum of $1131.51, which is the claim involved on this appeal. On oral objections by the trustee in bankruptcy, the court disallowed the claim. From this judgment of disallowance the Commonwealth prosecutes this appeal.

No question is raised as to the formal sufficiency of the proof of claim as filed. During its operation for the years in controversy the United Funds Management Corporation submitted to the Commonwealth of Pennsylvania annual statements as required by the law of that state, showing income and profits. From these reports and the independent judgment of the taxing authorities of Pennsylvania assessments were made of the amount of taxes due from the Company to the State for the years in controversy. The reports so filed correctly showed taxable income based upon the company's theory of reserves. It was operating a business classified as an investment trust. It sold certificates representing an interest in the trust consisting of a selected group of securities. These certificates were sold on monthly installments extending over a period of years and at the maturity of the certificate the holder was entitled to receive in cash the face amount of the certificate which in fact represented the amount paid plus earnings. The certificates provided for lapse and forfeiture under certain conditions, in which event the payments made became the property of the Company. It operated on the assumption that in the future the same percentage of certificate holders would permit their certificates to lapse as had lapsed in the past experience of the Company, and in calculating the amount of reserve set up for the ultimate payment of its certificates and in determining its annual profits it set up no reserve for the percentage of certificates which the Company assumed would be lapsed. It is argued that this practice was illegal and unsafe and that the Company should have set up a reserve upon the hypothesis that all of the outstanding certificates would be matured and have to be paid. Because of this alleged error the trial court concluded that there was no income properly subject to tax by the Commonwealth of Pennsylvania for the years in question. It is not claimed that the Pennsylvania taxing authorities committed any mathematical error in calculating the amount of taxes due but that the Corporation's returns were incorrect and that there was in fact no income on which to assess any tax whatever.

The assessments were determined by the taxing officials in accordance with the procedure prescribed by the Pennsylvania statutes. 72 P.S. § 3420a et seq. They were made by the Department of Revenue and delivered to the Auditor General where they were audited and approved. The Department of Revenue is a state agency created by statute to assess and collect taxes imposed by law and such assessments are subject to audit and approval by the Auditor General or to correction by the Board of Finance and Revenue. A very complete system of procedure for review and appeal from all tax assessments is provided by statute. Thus, within ninety days after the

date of any assessment the taxpayer may file a petition for resettlement. Within thirty days after notice of the action taken on any petition for a resettlement the taxpayer may petition the Board of Finance and Revenue to review such action. Following this procedure any taxpayer may, if dissatisfied, appeal to the Court of Common Pleas of Dauphin County, and may likewise appeal from the judgment of that court to the Supreme Court of Pennsylvania.

On February 9, 1942, the Company filed a petition for resettlement of corporation taxes as to the 1939 franchise and income tax. Its petition was refused both by the Department of Revenue and the Auditor General. No petition for review by the Board of Finance and Revenue was filed at any time. Later, the trustee in bankruptcy filed a petition for review, resettlement, abatement and refund, addressed to the Secretary of Revenue and the Auditor General and the Bureau of Corporation Taxes. With this petition the trustee submitted returns for the calendar year 1942, and prayed for a redetermination of tax liability for the years 1939 to 1941, inclusive, on the new facts submitted and for abatement of all sums found not to be due for taxes and for a refund. The Secretary of Revenue held that the filing of the petitions for resettlement and review was improper and not timely, advising that the only procedure open to the Company at that time was the filing of a compromise of taxes as provided by the Pennsylvania statute. No petition for review was filed nor were any further proceedings had or taken. The trustee on advice of counsel repudiates his action in invoking the jurisdiction of the Pennsylvania taxing authorities on the ground that he was without specific authority so to do.

Whether the Bankruptcy Court had the power to review and redetermine the tax assessments here involved which had been determined by the state taxing authorities in accordance with legislative authority, is the basic issue presented. Section 64, sub. a, of the Bankruptcy Act, 11 U.S.C.A. § 104, sub.a, so far as here material, reads as follows:

"The debts to have priority in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates * * * shall be * * * (4) taxes legally due and owing by the bankrupt to the United States or any State or any subdivision thereof: Provided, * * * that,

in case any question arises as to the amount or legality of any taxes, such question shall be heard and determined by the court * * *."

■ Correct or incorrect in respect to the amount of income assessable, it is clear that they were made by the proper taxing authorities of the State of Pennsylvania. The law of Pennsylvania apparently made ample provision for correction of any errors as to the amount or value of the property subject to taxation, but except for the action taken by the Company for the year 1939, and the action taken by the trustee which has been repudiated, neither the Company nor anyone in its behalf invoked any of the remedies provided for correction of the alleged error of which complaint is now made. At the time the claim was considered by the Bankruptcy Court the assessments had become final, and so far as the Pennsylvania law is concerned they were legally due and owing. The provision in Section 64, sub. a, supra, does not authorize or empower the Bankruptcy Court to revise and redetermine in respect to valuation an assessment made pursuant to state law. Arkansas Corporation Commission v. Thompson, 313 U. S. 132, 61 S.Ct. 888, 892, 85 L.Ed. 1244. In the course of the opinion in Arkansas Corporation Commission v. Thompson, supra, it is among other things said:

"If the trustee had availed himself of his right of appeal to the courts of Arkansas, with an ultimate right of appeal to this Court for final determination of federal questions, it is difficult to believe that it would now be seriously argued that Congress, by section 64, sub. a (4), intended to impose upon the bankruptcy court the unusual power and delicate duty of trying out afresh the facts found by the state with relation to the value of property. And there is no more reason to assume that Congress intended that the bankruptcy court should fail to give respect to an unappealed determination of value made by the Arkansas Corporation Commission. Bankruptcy and reorganization proceedings today cover a wide area in the business field. But there is nothing in the history of bankruptcy or reorganization legislation to support the theory that Congress intended to set the federal courts up as super-assessment tribunals over state taxing agencies. * * * Section 64, sub. a, thus construed, would tend to obstruct, and not to facilitate, the enforcement of state tax laws. Nothing in

the language of the Act requires such a construction. And the policy of revising and redetermining state tax valuations contended for by the trustee would be a complete reversal of our historic national policy of federal non-interference with the taxing power of states."

In Lyford v. City of New York, 2 Cir., 137 F.2d 782, 786, the court, in referring to the Arkansas Corporation Commission case, among other things said:

"In other words, the decision concerns a tax finally settled without appeal by the state authorities and an attack not on issues of legality, but on issues of valuation. Review in such a case involves the upsetting of state-taxing activities in ways beyond that permitted as to administrative action generally, as had been pointed out by commentators and as was held by the Supreme Court."

See, also, Baumann v. Sheehan, 8 Cir., 140 F.2d 747; In re Ingersoll, 10 Cir., 148 F.2d 282; Application of State of New Jersey, 3 Cir., 152 F.2d 408.

Prior to the decision of the Supreme Court in the Arkansas Corporation Commission case it was quite generally held that the Bankruptcy Court had authority under Section 64, sub. a (4), to examine into the validity and amount of a tax, to ascertain the facts upon which tax assessments were made, and determine their validity accordingly. The fact that an assessment had been determined by the state taxing authorities was held not to preclude a redetermination by the Bankruptcy Court. Speaking of the effect of the Arkansas case, Collier on Bankruptcy, 14th Edition, Volume 3, Section 64.407, has this to say:

"It would now appear settled * * * that where a duly constituted quasi-judicial agency, state or federal, has passed upon a tax claim by virtue of a due hearing thereon, the bankruptcy court cannot redetermine such claim or alter its amount unless (1) the agency has made an improper arithmetical computation, or (2) has acted beyond its legal powers, or (3) the assessment has been tainted by discernible illegality under the applicable tax law as distinguished from a mere alleged over-assessment based on an excessive valuation."

In Baumann v. Sheehan, supra, we said [140 F.2d 751]:

"Cases in the Federal courts, holding that there was a general power in a court of bankruptcy to revise state taxes assessed or levied on the property of the bankrupt, can not now, in view of the decision of the Supreme Court in Arkansas Corporation Commission v. Thompson, supra, be accepted as controlling. The trial court, in striking down the assessments here in question, proceeded to act as a higher authority than the state taxing officers and boards, and exceeded, we think, the equitable powers of a court of bankruptcy under controlling equitable rules."

 It is, however, urged that the statutes of Pennsylvania do not confer quasi-judicial authority upon its taxing agencies. With this contention we can not agree. As we have already pointed out, these statutes provide a complete system of procedure, including right of review and finally right of judicial review by appeal to the Supreme Court of Pennsylvania. The taxing authorities functioned in a quasi-judicial manner. Hearings were provided for and the procedure was adequate under the requirements of due process. The duties of these authorities were not merely ministerial.

The taxpayer, having failed to seek relief in the administrative or quasi-judicial tribunals of Pennsylvania and the remedies they afford, can not, we think, seek the aid of the Bankruptcy Court under the provisions of Section 64, sub. a, of the Bankruptcy Act. The judgment appealed from is therefore reversed and the cause remanded with directions to enter judgment allowing the tax claim of the Commonwealth of Pennsylvania as a priority claim.