**In re HOLLYTEX CARPET MILLS, INC., Debtor.**

**HOLLYTEX CARPET MILLS, INC., Plaintiff,**

v.

**OKLAHOMA EMPLOYMENT SECURITY COMMISSION, Defendant.**

**Bankruptcy No. BK–91–03283–BH. Adv. No. 94–1233.**

United States Bankruptcy Court, W.D. Oklahoma.

Nov. 22, 1994.

David T. Hopper, Oklahoma City, OK, for defendant.

Ross A. Plourde of Hartzog, Conger, Cason & Hargis, Oklahoma City, OK, for debtor/plaintiff.

1. While defendant did not formally make a cross motion for summary judgment its prayer for relief requested judgment in its favor; and that the complaint be dismissed. Defendant's Brief p. 4. Therefore, I will treat the response as a cross motion where the authority is such that granting summary judgment to the defendant even though no formal cross motion has been made under rule 56 is appropriate. 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2720 (1983). *See also,* *Dickeson v. Quarberg,* 844 F.2d 1435, 1444–5 (10th Cir.1988).

2. The OESC asserted this priority claim pursuant to 11 U.S.C. § 507 because it is a tax upon the relation of employment.

3. This 5.2% rate has since been reduced by the Oklahoma Employment Security Commission for credits due Hollytex. The current rate is 3.9%.

4. Specifically, state unemployment insurance is an aspect of the Federal Social Security program

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

RICHARD L. BOHANON, Bankruptcy Judge.

■ Plaintiff's complaint seeks a declaration that defendant is barred from seeking to collect certain taxes due to its confirmed plan. It has moved for summary judgment under Fed.R.Bankr.P. 7056. Effectively, the Court is presented with cross motions for summary judgment.[1]

### STATEMENT OF THE FACTS

Hollytex, a manufacturer of fibers and carpet materials, filed its chapter 11 petition in 1991. During the pendency of the case, Hollytex remained debtor-in-possession. The Oklahoma Employment Security Commission (OESC) asserted a priority claim in the amount of $44,160.20.[2] In 1992, this Court confirmed the Hollytex plan of reorganization. The claim of OESC is treated such that Hollytex will pay the claim in full with interest in six equal annual installments.

Prior to confirmation, OESC fixed Hollytex's employer's contribution rate under the Oklahoma Employment Security Act of 1980 effective for the year 1992 at 5.2%.[3] This contribution rate is assessed under state law but under a scheme that is part of a federal system applied, in varying methodologies, throughout the United States.[4] The statute provides for a systematic accumulation of

under 26 U.S.C. § 3301 *et seq.* It is a coordinated federal-state program designed to provide economic security for workers during temporary periods of unemployment. It is financed through both federal and state taxes or "contributions" imposed upon employers. The federal tax provides for the allowance of a ninety percent credit against such tax if a state participates. Once a state participates, the remaining ten percent goes toward federal administration of the program. The state tax is used for the payment of benefits to unemployed workers. Each state law enacted must meet the eighteen mandates of 26 U.S.C. § 3304 and then be approved by the Secretary of Labor in order for the state to participate. Every state has enacted such a law and they are all similar in scheme. Oklahoma's law has been approved. *See,* 26 U.S.C. § 3301 *et seq.;* 42 U.S.C. § 1101 *et seq.;* and 1B Unempl.Ins.Rep. (CCH) ¶ 20,000.

funds during periods of employment in order to eliminate the consequences of possible unemployment. The public policy goal of the statute is:

> ... to provide through the accumulation of reserves for the payment of compensation to individuals with respect to their unemployment. 40 O.S. § 1–102 (1991).

The rate assigned to Hollytex was fixed pursuant to the statutory formula which examines a number of objective factors prescribed in Title 40 O.S. §§ 3–104 to 3–110. The formula operates in a statutorily mandated manner. The first factor is the benefit wage ratio which is determined by dividing the employer's total benefit wages for the three previous years by the total taxable payroll for those same three years paid on or before January 31st.[5] The second ratio is the state experience factor which is which is the total benefits paid from the fund for the same three years divided by the statewide total of benefit wages of all employers for the same three years. 40 O.S. § 3–108. The purpose of this provision is apparently to encourage timely payment of the taxes and to penalize late payment in order to provide for a solvent fund. Finally, to arrive at the contribution rate to be applied to the employer's current payroll, one examines a table based on these two ratios. 40 O.S. § 3–109.

In this case, Hollytex's rate is substantially higher than its rate in prior years for two reasons. One of the reasons for the increase in Hollytex's contribution rate is the fact that contributions owed by Hollytex for periods prior to the commencement of the case were not paid when due, causing the benefit wage ratio to increase. Simply put, Oklahoma law provides that if the unemployment contribution or taxes are not paid by January 31 of

any given year then the taxes assessed for succeeding years will be increased. Hollytex's increase in rate is also attributable to increased benefit payments to its employees who were furloughed due to Hollytex's financial difficulties.

### CONCLUSIONS OF LAW

This complaint presents an issue that would seem to arise fairly frequently, but there are very few reported decisions concerning it.[6] It concerns the treatment of unemployment contributions assessed after confirmation of a chapter 11 plan of reorganization.

Courts have addressed this issue differently. *Michigan Employment Security Commission v. Wolverine Radio Co., Inc. (In re Wolverine Radio Co., Inc.)*, 930 F.2d 1132 (6th Cir.1991), held that the Michigan Employment Security Commission could consider factors not related to the bankruptcy proceeding such as past employment experience and other experience ratings in determining future unemployment contributions. *Wolverine, supra* note 4 at 1147. However, that Court went on to determine that debts discharged under the Chapter 11 Plan, which included the "negative reserve balance," should be excluded from the calculation because it would conflict with §§ 1129(a)(9)(C) and 1141(d)(1)(A). *Id., supra* note 4 at 1149–50.

In *Active Steel* the state sought to raise unemployment taxes to the highest rate because the debtor failed to pay pre-petition taxes. The Court examined § 507 and determined that tax creditors were to be dealt with in accordance with § 1129(a)(9)(C). That Court held further that these sections

---

5. 40 O.S. § 3–107 (1991) states:

   **§ 3–107. Benefit Wage Ratio**
   The benefit wage ratio of each employer shall be a percentage equal to the total of his benefit wages for the most recent three (3) consecutive completed calendar years divided by his total taxable payroll for the same three (3) years on which contributions have been paid to the Commission on or before January 31 of the calendar year with respect to which his benefit wage ratio is determined. 40 O.S. § 3–107 (1991).

6. The cases cited by both parties seem to be an exhausted search for authority. The plaintiff cites *Michigan Employment Security Commission v. Wolverine Radio Co., Inc. (In re Wolverine Radio Co.)*, 930 F.2d 1132 (6th Cir.1991); *In re Draggoo Electric Co.*, 57 B.R. 916 (Bankr. N.D.Ind.1986); *In re Active Steel Erectors, Inc.*, 53 B.R. 851 (Bankr.D.Alaska 1985). The defendant cites *In re Pine Knob Investment*, 20 B.R. 714 (Bankr.E.D.Mich.1982); *In re A.C. Williams Co.*, 51 B.R. 496 (Bankr.N.D.Ohio 1985); *In re Primrose Bedspread Corp.*, 67 B.R. 659 (Bankr. D.N.J.1986).

supersede any conflicting provisions of the state statutes under the Supremacy Clause of the United States Constitution. The Court went on to hold:

> [O]nly a debtor with a confirmed Chapter 11 plan whose plan in conjunction with the provisions of § 1141 of the Code discharges any tax penalty that is asserted in contravention of § 1129(a)(9)(C) will be able to avoid the penalty rate. *Active Steel, supra* note 4 at 854.[7]

*Draggoo Electric* held the same where the state attempted to impose a penalty rate which could only be avoided through the payment of pre-petition taxes.

Here, Hollytex owed some $45,000 in unemployment taxes to the defendant but did not pay them by January 31, 1992 as required by the state statute. Therefore, the payment was delinquent. In June of 1992 Hollytex's plan of reorganization was confirmed. In pertinent part it provides for payment of the taxes in full over six years with interest as contemplated in 11 U.S.C. § 1129(a)(9)(C). The defendant treated the order of confirmation of the plan as payment and discharge of the tax debt, albeit some six months late. Thus, when it came to calculate Hollytex's tax obligation for the following year it treated the payment as late and applied the appropriate increase in assessing the tax due. Hollytex then brought this complaint contending that this treatment violates the terms of the plan and the discharge provided for in 11 U.S.C. § 1141(d)(1)(A). This section pertinently provides that the confirmation order "discharges the debtor from any debt that arose before the date of such confirmation ..."

■ This Court is not so persuaded by the cases holding that states may not employ their statutory calculations to Chapter 11 debtors. First, there is no frustration of federal law implicating the Supremacy Clause of the Constitution of the United States.[8] *See, Arkansas Corp. Commission v. Thompson,* 313 U.S. 132, 61 S.Ct. 888, 85 L.Ed. 1244 (1941).

■ Thus, the issue is whether or not the treatment provided by the defendant is a debt which is discharged as that term is used in § 1141 of the Bankruptcy Code. Debt is defined as "liability on a claim." 11 U.S.C. § 101(12). Claim is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. § 101(5). Here, no debt exists because no liability is established where there is no right to payment. Rather I am presented with a statistical analysis of an employer's prior experience to establish future tax rates. *See, A.C. Williams supra* note 4 at 501. The fact is that the tax was paid late. It is an historical occurrence or event and not a debt which is to be considered as one factor in determining the tax to be assessed. This Court declines to construe the Code so broadly as to include in the definition of "debt" the pre-petition employer experience factor under 40 O.S. § 3–107 within this definition.

■ In addition, the Employment Security Commission is not attempting to collect a pre-petition debt but rather create a solvent fund to be used prospectively. The plaintiff requests this Court to alter the application of a non-discriminatory statute based solely on the fact that it is a Chapter 11 debtor. To do so would create a burden on companies that pay timely and act in accordance with the statutory requirements. I am faced with the proper application of a state statute without any manifest statutory authority for this Court to alter the tax rate.

■ This Court notes the manner in which various factors of past experience is used to

---

7. *In re Draggoo, supra* note 4, holds similarly citing *Active Steel.*

8. In *Arkansas Corp. Commission v. Thompson,* 313 U.S. 132, 61 S.Ct. 888, 85 L.Ed. 1244 (1941), the Supreme Court held that:

> [t]here is nothing in the history of the bankruptcy or reorganization legislation to support the theory that Congress intended to set the federal courts up as super-assessment tribunals over state taxing agencies.... And the policy of revising and redetermining state tax valuations contended for by the trustee would be a complete reversal of our historic national policy of federal non-interference with the taxing power of states. *Id.,* at 145, 61 S.Ct. at 892.

determine future rates. *Wolverine* states that it would be in conflict with the provisions of §§ 1129(a)(9)(C) and 1141 to allow the state to charge a higher contribution rate based on a debt discharged by a plan. I disagree. This failure to make an annual contribution by January 31st is just one of a number of non-discriminatory factors which determine the corporation's future contribution. This formula used by the Oklahoma Employment Security Commission is the operation of a statutory formula. While the pre-petition claim is dealt with under the plan, here it is only relied upon for statistical analysis. *See, Primrose, supra* note at 662.

I eschew denying the application of a state statute where our firmly entrenched national policy is one of non-interference with the taxing power of states. *Arkansas Corp. Commission, supra* note 313 U.S. at 145, 61 S.Ct. at 892. *See also* 28 U.S.C. 959(b) which apparently does not apply after confirmation but still states the congressional policy that persons managing bankruptcy estates are not excused from compliance with state laws.

For these reasons, summary judgment is entered in favor of the defendant.

It is so ordered.