**In re BLUE CACTUS POST,**
**L.C., Debtor.**

**Blue Cactus Post, L.C., and Pyramid Teleproductions, Inc. Plaintiffs,**

v.

**Dallas County Appraisal District, the County of Dallas, the City of Irving, and the Carrollton–Farmers Branch Independent School District, Defendants.**

**Bankruptcy No. 397–33874–HCA–11.**
**Adversary No. 397–3450.**

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

Jan. 19, 1999.

be prohibited from filing within the 180–day period.

Mike M. Tabor, Clark, West, Keller, Butler & Ellis, L.L.P., Dallas, TX, for Dallas Central Appraisal District.

Elizabeth Weller, Linebarger, Heard, Goggan & Blair, Dallas, TX, for Dallas County.

St. Clair Newbern, III, Law Offices of St. Clair Newbern, III, Fort Worth, TX, for Pyramid Teleproductions, Inc.

W.T. "Skip" Leake, Arlington, TX, for Blue Cactus Post, L.C.

Mary Frances Durham, Office of the United States Trustee, Dallas, TX.

The Law Offices of Robert E. Luna, Attn: Daniel K. Beardon, Jr., Dallas, TX, for Carrollton–Farmers Branch ISD.

*MEMORANDUM OPINION ON THE DALLAS CENTRAL APPRAISAL DISTRICT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT*

HAROLD C. ABRAMSON, Bankruptcy Judge.

Came before the Court for hearing, the Dallas Central Appraisal District's Motion to Dismiss or For Summary Judgment ("Motion"), and the responses thereto filed by Blue Cactus Post, L.C. and Pyramid Teleproductions, Inc. (the "Plaintiffs") and the County of Dallas. This memorandum opinion constitutes findings of fact and conclusions of law under Federal Rules of Bankruptcy Procedure 7052 and 9014. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 151, and Miscellaneous Rule No. 33 of the District Court for the Northern District of Texas, which is the standing order of reference in this district. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (K) and (O).

## I. Nature of Proceeding

The Plaintiffs in this proceeding have asked the Court to determine the ownership of certain personal property and its fair market value to establish their ad valorem tax liability under §§ 541 and 505 of the Bankruptcy Code.

The Dallas Central Appraisal District (the "DCAD") asserts that it should be dismissed as a defendant, or in the alternative, be granted summary judgment, on the following grounds:

1. Sovereign immunity bars suit against the DCAD in a federal forum and requires its dismissal for lack of jurisdiction.
2. The DCAD should be dismissed as a party pursuant to Rule 21 of the Federal Rules of Civil Procedure, because there is not a sufficient controversy between the plaintiffs and DCAD.
3. The plaintiffs cannot challenge the tax appraisals for the 1993 through 1996 tax years because the tax liability was settled or adjudicated in accordance with 11 U.S.C. § 505(2)(A) for those years.
4. Pyramid Teleproductions, Inc. is an indispensable party to this action, under Rule 19 of the Federal Rules of Civil Procedure.[1]

Dallas County filed a response to the Motion in which it argues that the DCAD is not entitled to sovereign immunity and that it is a necessary party to this proceeding and should not be dismissed. However, Dallas County agrees with the DCAD on its 3rd ground for dismissal or summary judgment, that the Plaintiffs cannot challenge the tax appraisals for the 1993–1996 tax years. Not surprisingly, the Plaintiffs join Dallas County in its opposition to the DCAD being dropped as a party to the action, but disagree with the contention that the value of the property has been settled for the 1993–1996 tax years.

## II. Analysis

### A. Sovereign Immunity

The DCAD asserts that sovereign immunity bars this suit against it because it is an "arm of the state," and is therefore entitled

---

1. Since the filing of the Motion, Pyramid Teleproductions, Inc. has intervened in this action which renders this point moot, and it will therefore not be addressed.

to immunity from suits in federal courts. It argues that application of 11 U.S.C. § 106(a) to allow suit against it under 11 U.S.C. § 505 unconstitutionally violates its Eleventh Amendment right to sovereign immunity.

■ Based on the Supreme Court's ruling in *Seminole Tribe*, it is undisputed that Congress cannot use its Article I powers to abrogate a state's Eleventh Amendment sovereign immunity, which bars suits brought in federal courts against an unconsenting state.[2] The Fifth Circuit, among others, has applied the Supreme Court's decision in *Seminole Tribe* to the abrogation of sovereign immunity by Congress in 11 U.S.C. § 106(a), finding it unconstitutional.[3] It is also undisputed that the DCAD is not the State of Texas; however, the scope of the Eleventh Amendment is not limited to suits that name the state as a defendant, but bars any suit in which the state is the "real, substantial party in interest."[4] Thus, this Court must determine whether the DCAD satisfies this standard for sovereign immunity purposes.

■ The DCAD argues that it is protected from suit by the Eleventh Amendment by virtue of its creation as a political subdivision of the State of Texas under the Texas Property Tax Code.[5] However, simply being a political subdivision of a state is not enough to confer the state's identity on an entity for sovereign immunity purposes.[6] As the United States Supreme Court said in *Reynolds v. Sims:*

> Political subdivisions of States—counties, cities, or whatever—never were and never have been considered as sovereign entities. Rather, they have been traditionally regarded as subordinate governmental instrumentalities created by the State to assist in the carrying out of state governmental functions. As stated by the Court in Hunter v. City of Pittsburgh, 207 U.S. 161, 178, 28 S.Ct. 40, 46, 52 L.Ed. 151, these governmental units are 'created as convenient agencies for exercising such of the governmental powers of the state as may be entrusted to them,' and the 'number, nature, and duration of the powers conferred upon (them) and the territory over which they shall be exercised rests in the absolute discretion of the state.' The relationship of the States to the Federal Government could hardly be less analogous.[7]

Therefore, in order for the DCAD to be protected from suit by the Eleventh Amendment, it cannot rely on its status as a political subdivision of the State of Texas, but must be an "arm of the state," and in effect, stand in the shoes of the state itself.[8] Federal law controls its eligibility for Eleventh Amendment immunity, "But that federal question

**2.** *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, at 63, 116 S.Ct. 1114, at 1128, 134 L.Ed.2d 252 (1996) (overruling *Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989)).

The United States Constitution provides:
The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.
U.S. Const. amend. XI.

**3.** *Department of Transportation and Development v. PNL Asset Management Co. (In re Fernandez),* 123 F.3d 241, 246 (5th Cir.1997) (declaring § 106(a) unconstitutional); *See also Sacred Heart Hospital of Norristown v. Commonwealth of Pennsylvania Dept. of Public Welfare (In re Sacred Heart Hospital of Norristown),* 133 F.3d 237, 243 (3rd Cir.1998); *Schlossberg v. Maryland (In re Creative Goldsmiths of Washington D.C., Inc.),* 119 F.3d 1140, 1145 (4th Cir.1997); *See also French v. Georgia Dept. of Revenue (In re ABEPP*

*Acquisition Corp.),* 215 B.R. 513, 518 (6th Cir. BAP 1997).

**4.** *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984).

**5.** *See* Tex. Tax Code Ann. § 6.01(c) (Vernon 1992).

**6.** *See Edelman v. Jordan,* 415 U.S. 651, 667–68 n. 12, 94 S.Ct. 1347, 1358 n. 12, 39 L.Ed.2d 662 (1974); *Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964) (counties, among a list of other political subdivisions, do not enjoy the state's sovereign immunity under Eleventh Amendment).

**7.** *Id.* at 575, 84 S.Ct. 1362.

**8.** *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572–573, 50 L.Ed.2d 471 (1977); *Hander v. San Jacinto Junior College,* 519 F.2d 273, 278 (5th Cir.) modified on other grounds, 522 F.2d 204 (5th Cir. 1975).

can be answered only after considering the provisions of state law that define [its] character."[9] In making this determination, the focus is on the "nature of the entity created by state law" to determine whether it should be treated as an "arm of the State."[10]

■ Under Texas law, the relevant factors to consider when making the determination as to whether an entity should be treated as an "arm of the state" are: (1) whether the state, through statutes or case law, views the entity as an arm of the state; (2) the source of the entity's funding; (3) whether the entity is concerned with local or statewide problems; (4) the entity's degree of authority independent from the state; (5) whether the entity can sue and be sued in its own name; and (6) whether the entity has the right to hold and use property.[11] The Court will consider each factor in turn.

## 1. How the state views the DCAD

■ The process of real property taxation in Texas is set forth in the Texas Property Tax Code, TEX. TAX CODE ANN. § 1.01, et seq. (Vernon 1992 & Supp.1998) (the "Property Tax Code"). Section 6.01 of the Property Tax Code establishes in each county of the State an "appraisal district" charged to appraise property in the district for ad valorem tax purposes, for the benefit of the State and for each "taxing unit" that is authorized to impose ad valorem taxes on real property in the county.

Under the Property Tax Code, the DCAD was created as a political subdivision of the State of Texas.[12] As under federal law, Texas case law also considers political subdivisions to be something lesser than the State or its agencies.[13] In *Monsanto*, the Texas Supreme Court said:

The ordinary meaning of "state," as it used by the Texas courts, envisions an entity having statewide jurisdiction rather than an entity having local or limited jurisdiction. In Guaranty Petroleum Corp. v. Armstrong, 609 S.W.2d 529 (Tex.1980), we held that a navigation district created pursuant to article XVI, section 59 of the Texas Constitution was a political subdivision of the state, and "not a 'department, board or agency of the state'...." Id. at 530. In reaching that conclusion, we recognized that:

[a] political subdivision differs from a department board or agency of the State. A political subdivision has jurisdiction over a portion of the State; a department, board or agency of the State exercises its jurisdiction throughout the State. Members of the governing body of a political subdivision are elected in local elections or are appointed by locally elected officials; those who govern departments, boards or agencies of the State are elected in statewide elections or are appointed by State officials. Political subdivisions have the power to assess and collect taxes; departments, boards and agencies do not have that power. Our examination of a number of statutes shows that the legislature has consistently recognized these distinctions between departments, boards or agencies on the one hand and political subdivisions on the other.

Id. at 531 (footnote omitted).[14]

**9.** *Regents of the Univ. of California v. Doe,* 519 U.S. 425, 429 n. 5, 117 S.Ct. 900, 904 n. 5, 137 L.Ed.2d 55 (1997).

**10.** *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572–573, 50 L.Ed.2d 471 (1977), *Laje v. R.E. Thomason Gen. Hosp.,* 665 F.2d 724, 727 (5th Cir.1982).

**11.** *Earles v. State Bd. of Certified Public Accountants of Louisiana,* 139 F.3d 1033, 1037 (5th Cir.1998); *Farias v. Bexar County Bd. of Trustees for Mental Health Mental Retardation Services,* 925 F.2d, 866, 874 (5th Cir.1991); *Minton v. St.* *Bernard Parish Sch. Bd.,* 803 F.2d 129, 131 (5th Cir.1986).

**12.** *See* TEX. TAX CODE ANN. § 6.01(c) (Vernon 1992).

**13.** *Monsanto Co. v. Cornerstones Mun. Utility Dist.,* 865 S.W.2d 937 (Tex.1993); *Guaranty Petroleum Corp. v. Armstrong,* 609 S.W.2d 529 (Tex. 1980).

**14.** *Monsanto Co. v. Cornerstones Mun. Utility Dist.,* 865 S.W.2d 937, 939–940 (Tex.1993) (citing *Guaranty Petroleum Corp. v. Armstrong,* 609 S.W.2d 529, 531 (Tex.1980)).

Also, as stated above, the United States Supreme Court has "consistently refused to construe the [Eleventh] Amendment to afford protections to political subdivisions such as counties and municipalities, even though such entities exercise a 'slice of state power.' "[15]

The DCAD is not an agent of the State of Texas, but has been called a governmental agent of the county for which it serves for the purpose of appraising property for ad valorem taxation,[16] or an agent of the taxing unit which utilizes it to make appraisals.[17] This factor weighs against a finding of Eleventh Amendment immunity for the DCAD.

## 2. The source of funding for the DCAD

Funding for the DCAD comes directly from the local taxing units for which it performs appraising functions, and not from the State of Texas.[18] While changes to the allocation system established by the State of Texas for financing the operations of an appraisal district may be made by the participating taxing units, these costs may not be passed on to the State.[19] If an appraisal district requests professional assistance from the Comptroller of Public Accounts of the State of Texas (the "Comptroller"), the appraisal district is responsible for reimbursement of the cost.[20] This factor weighs against a finding of Eleventh Amendment immunity for the DCAD.

## 3. Whether the DCAD is concerned with local or statewide problems

The scope of the DCAD's responsibility is limited to Dallas County. It is responsible for appraising property located in Dallas County for each taxing unit that imposes ad valorem taxes on property in the district.[21] The purpose of an appraisal district is to place a single value on each piece of taxed property located within the district.[22] This factor weighs against a finding of Eleventh Amendment immunity for the DCAD.

## 4. The degree of the DCAD's independence from the state.

The DCAD is governed by a board of directors appointed by the taxing units that participate in the district.[23] The State of Texas does not participate in the appointment process. However, the Comptroller adopts rules establishing minimum standards for the administration and operation of appraisal districts and may require an annual report from the district, on a form prescribed by the Comptroller, on the administration and operation of the appraisal office.[24] If the Comptroller finds that the appraisal district is not in compliance with generally accepted appraisal standards and practices in two consecutive reviews and the district's chief appraiser has not taken effective remedial action, the Comptroller may appoint a special master to exercise supervision and control over the operations of the district until full compliance is achieved.[25]

This factor seems to give mixed indications of the DCAD's independence from the State of Texas; however, the establishment of "minimum standards" and reporting requirements by the State are not enough to weigh

15. *Crane v. State of Texas*, 759 F.2d 412 (5th Cir.1985) (citing *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979)).

16. *Dallas County Appraisal Dist. v. Institute for Aerobics Research*, 751 S.W.2d 860 (Tex.1988) (DCAD exempt from filing appeal bond as an agent of the county).

17. Op. Tex. Att'y Gen. No. JM–919 (1988); *See also Dallas County Appraisal Dist. v. Institute for Aerobics Research*, 751 S.W.2d 860, 862 (Tex. 1988) (Kilgarlin, J., dissenting).

18. Tex. Tax Code Ann. § 6.06(d) (Vernon Supp. 1998).

19. Tex. Tax Code Ann. § 6.061 (Vernon 1992 & Supp.1998).

20. Tex. Tax Code Ann. § 41.65 (Vernon 1992).

21. Tex. Tax Code Ann. §§ 6.01 (Vernon 1992), 6.02 (Vernon 1992 & Supp.1998).

22. *General Motors Acceptance Corp. v. Harris County Mun. Utility Dist.*, 899 S.W.2d 821 (Tex. App.—Houston [14th Dist.] 1995, n.w.h.).

23. Tex. Tax Code Ann. § 6.03 (Vernon Supp.1998).

24. Tex. Tax Code Ann. § 5.03 (Vernon 1992).

25. Tex. Tax Code Ann. § 5.102 (Vernon Supp. 1998).

this factor in favor of Eleventh Amendment immunity.[26] Though the State's ability to appoint a special master gives it some control over the operations of the DCAD, this is used as a remedy to correct non-compliance with generally accepted appraisal standards, and the DCAD's day-to-day activities are controlled by the board, which is appointed, funded and controlled by the taxing entities.[27]

### 5. The DCAD's capacity to sue and be sued

The DCAD may, and in some instances must, be sued in its own name.[28] Further, as provided in the Property Tax Code, "a taxing unit may sue the appraisal district that appraises property for the unit to compel the appraisal district to comply with the provisions of [the Property Tax Code], rules of the State Property Tax Board, or other applicable law." [29] Therefore, this factor weighs against a finding of Eleventh Amendment immunity for the DCAD.

### 6. The DCAD's right to hold and use property

The Property Tax Code authorizes the board of directors of an appraisal district to purchase or lease real property and construct improvements as necessary to establish and operate an appraisal office or branch appraisal office.[30] Property may be bought or sold and improvements may be constructed with the approval of the taxing units that make up the appraisal district.[31] This factor also weighs against a finding of Eleventh Amendment immunity for the DCAD.

After considering each of the above factors, the Court concludes that the DCAD is not an arm of the State of Texas; and therefore, not entitled to the State's sovereign immunity protection under the Eleventh Amendment.

### B. Rule 21

■ The DCAD requests that it be dismissed as a party to this suit pursuant to FED.R.CIV.P. 21, because it is not among the "persons needed for just adjudication" under FED.R.CIV.P. 19(a). Rule 21 permits parties to be "dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." Dropping or adding a party to a lawsuit pursuant to Rule 21 is left to the sound discretion of the trial court.[32] In determining whether a party should be dropped, the Court should determine whether the party requesting to be dropped is a necessary party, pursuant to Rule 19(a). Rule 19(a) provides that a party shall be joined if:

(1) in the person's absence complete relief cannot be accorded among those already parties, or

(2) the person claims an interest relating to the subject of the action.... [33]

■ Dallas County asserts that the DCAD is a necessary party because, under state law, the DCAD is responsible for determining the ownership and value of property to be taxed and state law requires appraisal districts to be sued in order for a decision of the appraisal review board on tax protests to be reviewed, pursuant to Property Tax Code § 42.21(b). Also, Dallas County argues that it is barred from valuing property for tax purposes or hiring a qualified appraiser to assist with this task.[34] The DCAD counters

---

26. *See Flores v. Cameron County Texas*, 92 F.3d 258, 266–267 (5th Cir.1996) (where minimum standards were established by the state, juvenile probation board found to be an arm of the county, not the state).

27. *See* TEX. TAX CODE ANN. §§ 6.03 (Vernon Supp. 1998), 6.06 (Vernon 1992 & Supp.1998), 6.10 (Vernon 1992).

28. TEX. TAX CODE ANN. § 42.21 (Vernon 1992).

29. TEX TAX CODE ANN. § 43.01 (Vernon 1992).

30. TEX. TAX CODE ANN. § 6.051(a) (Vernon 1992).

31. TEX. TAX CODE ANN. § 6.051(b) (Vernon 1992).

32. *Lampliter Dinner Theater, Inc. v. Liberty Mut.*, 792 F.2d 1036, 1045 (11th Cir.1986); *Williams v. Hoyt*, 556 F.2d 1336, 1341 (5th Cir.1977).

33. FED. R. CIV. P. 19(a).

34. Dallas County cites TEX. TAX CODE § 1.15, which provides:

A taxing unit may not employ any person for the purpose of appraising property for taxation purposes except to the extent necessary to per-

with the argument that its role is strictly valuing real and personal property, and that once this valuation is made, the DCAD and the appraisal review board turn the appraisal rolls over to the taxing authorities who assess and collect the taxes. The Plaintiffs argue that the DCAD is a necessary party because only the DCAD can change the taxable value of the property against which the taxes Dallas County, and the other taxing authorities who have filed claims, have assessed taxes.

It is true that procedurally, pursuant to the Property Tax Code, the DCAD is responsible for initially determining the value of the property located within its boundaries for tax purposes as of January 1st of each year.[35] The DCAD is also involved in protests of this valuation by the taxpayer.[36] However, this proceeding was not brought under the Property Tax Code, it was brought under the Bankruptcy Code, which preempts state law,[37] and authorizes the Court, subject to certain limitations, to "determine the amount or legality of any tax, fine or penalty relating to a tax, or any addition to tax whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction."[38] As

stated by the court in *Fairchild Aircraft Corp.:*

> Simple logic demonstrates that property tax valuation is in fact a two-part process, consisting of both valuation and tax rate adjustment. That the state authorities have delegated these functions to two different agencies does not alter the fact that both functions make up the single task of determining the amount and legality of a given tax.... The use of Section 505 to, in effect, remove only that valuation adjudication stage to the bankruptcy court is entirely consistent with the intended function of that section and does not undermine the state property taxation process.[39]

When making its determination under § 505:(1) the Court's valuation must be consistent with state law principles;[40] and (2) the Court must give full faith and credit to the law of the state upon which the tax to be determined is based.[41] However, full faith and credit applies to the substantive aspects of state law only, and not to its procedural aspects.[42] The power to disregard the state's procedural requirements for protesting tax liabilities under the Bankruptcy Code goes to the very heart of the necessity for the determination by the bankruptcy court under § 505.[43] Therefore, the substan-

form a contract under Section 6.05(b) of this code.
Tex. Tax Code Ann. § 1.15 (Vernon 1992). However, this provision of the Property Tax Code, which prohibits taxing authorities from hiring outside appraisers to value property for taxation purposes, is inapplicable to this situation where an appraiser may or may not be necessary for litigation purposes. Further, under 11 U.S.C. § 505(a)(1), the Court, and not the DCAD, is responsible for valuing the property and ultimately determining the amount of tax.

**35.** Tex. Tax Code Ann. § 23.01(a) (Vernon 1992).

**36.** A taxpayer must file a notice of protest of the appraisal with the appraisal review board within thirty (30) days after receiving the appraisal district's notice. Tex. Tax Code Ann. § 41.44(a) (Vernon 1992). The property owner is entitled to an opportunity to appear and offer evidence or the property owner may offer evidence by affidavit. Tex. Tax Code Ann. § 41.45 (Vernon 1992 & Supp. 1998). A property owner may appeal the appraisal review board's determination by filing a petition for review with a district court against the appraisal district within forty-five (45) days after the owner receives notice that a final order

has been entered. Tex. Tax Code Ann. §§ 42.01(a) (Vernon Supp.1998), 42.21 (Vernon 1992).

**37.** U.S. Const., Art. VI.

**38.** 11 U.S.C. § 505(a)(1).

**39.** *In re Fairchild Aircraft Corp.,* 124 B.R. 488, 492 (Bankr.W.D.Tex.1991).

**40.** *Id.*

**41.** *Arkansas Corp. Comm'n v. Thompson,* 313 U.S. 132, 142, 61 S.Ct. 888, 891, 85 L.Ed. 1244 (1941).

**42.** *In re Fairchild Aircraft Corp.,* 124 B.R. 488, 493 n. 3 (Bankr.W.D.Tex.1991).

**43.** See *In re Northwest Beverage, Inc.,* 46 B.R. 631, 635 (Bankr.N.D.Ill.1985). "Section 505 of the Bankruptcy Code and the predecessor section in the Act were enacted to '... protect[s] the estate from the negligence or indifference of a debtor who has defaulted in tax assessment proceedings....' 3 Collier on Bankruptcy, 505–23

tive law of the State of Texas will govern the Court's determination in this proceeding, but the procedural requirements, including the necessity to bring a petition for review against the appraisal district, are irrelevant. The DCAD is not a necessary party under Rule 19(a), and should be dropped from this adversary proceeding.

## C. 11 U.S.C. § 505(a)(2)(A)

The DCAD and the County of Dallas have asked the Court to grant summary judgment for tax years 1993–1996 because these years have been "previously adjudicated" under 11 U.S.C. § 505(a)(2)(A). Under Federal Rule of Civil Procedure 56(c), made applicable by Federal Rule of Bankruptcy Procedure 7056, summary judgment may be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law because no genuine issue of material fact exists.[44] The court must draw inferences in the light most favorable to the party opposing the motion.[45] The respondent may not rest on the mere allegations or denials in its pleadings but must set forth specific facts showing a genuine issue for trial.[46]

The DCAD relies on § 505(a)(2)(A), which provides:

> The court may not determine the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title.[47]

For the purpose of this summary judgment motion, the Court will take the facts as plead by the Plaintiffs and assume that the property was owned by Pyramid Teleproductions in 1993 and transferred to Blue Cactus by its foreclosure action in 1995. In two of the five years in question, there was some form of contest to the DCAD's appraised value of the property in question by the Plaintiffs, as follows: (1) in 1993, Pyramid Teleproductions contested the value of the property assessment and negotiated a settlement prior to hearing with the DCAD; and (2) in 1996, Blue Cactus Post filed a protest with the appraisal review board, but did not appear at the hearing, and a default was entered. According to Blue Cactus Post, its representative never received notice of the 1996 tax protest hearing.

 As to the 1993 tax year, the Nolan Affidavit shows that there was a settlement agreement between Pyramid Teleproductions and the DCAD. Settlement agreements are considered to be "adjudications" within the meaning of § 505(a)(2)(A).[48] As the court in *El Tropicano* said:

> Settlement agreements have always been a favored means of resolving disputes. When fairly arrived at and properly entered into, they are generally viewed as binding, final, and conclusive of rights as a judgment.... [These settlement agreements are], by the standards used in other kinds of litigation, "contested before and adjudicated by a judicial or administrative tribunal...." These settlements should count as an adjudication on the merits just as surely as would such settlements in

---

(15th ed.1979). In enacting § 505, Congress was primarily concerned with protecting ·creditors from the dissipation of the estate's assets which could result if the creditors were bound by a tax judgment which the debtor, due to his ailing financial condition, did not contest." *Id.* (citing *In re Century Vault Co.*, 416 F.2d 1035, 1041 (3rd Cir.1969); *City of Amarillo v. Eakens*, 399 F.2d 541, 544 (5th Cir.1968), cert. denied, 393 U.S. 1051, 89 S.Ct. 688, 21 L.Ed.2d 692 (1969); *In re New England High Carbon Wire Corp.*, 39 B.R. 886, 889 (Bankr.D.Mass., 1984)).

**44.** *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**45.** *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

**46.** *Matsushita Electric Industry, Inc. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

**47.** 11 U.S.C. § 505(a)(2)(A).

**48.** *El Tropicano, Inc. v. Garza (In re El Tropicano, Inc.)*, 128 B.R. 153, 157–158 (Bankr. W.D.Tex.1991) (pre-petition settlement agreements between debtor and appraisal district were "considered before and adjudicated by a judicial or administrative tribunal").

virtually any other context, and nothing in Section 505(a)(2) suggests that a contrary reading is either necessary or appropriate.[49]

Therefore, this Court will use the settlement agreement between the DCAD and Pyramid Teleproductions as the basis for valuation of the property for the 1993 tax year. However, there is an issue of fact as to whether 1996 was ever actually contested before the appraisal review board; therefore, the Court will not grant summary judgment as to that year.

## III. Conclusion

In conclusion, the Court finds: (1) the DCAD is not an arm of the State of Texas; and therefore, not entitled to the State's sovereign immunity protection under the Eleventh Amendment; (2) the DCAD is not a necessary party to this proceeding and should be dismissed as a party pursuant to Rule 21; and (3) the Court will not will not make a § 505(a)(1) determination as to tax year 1993.

A separate order will be entered consistent with this decision.

**49.** *Id.* (citations omitted).