QUINN, County Assessor, et al. v. AERO SERVICES, Inc.

No. 11907.

United States Court of Appeals Ninth Circuit.

Jan. 24, 1949.

Rehearing Denied March 14, 1949.

158

Harold W. Kennedy, County Counsel, and Andrew O. Porter and James A. Cobey, Deputies County Counsel, Los Angeles County, all of Los Angeles, Cal., for appellant.

Francis B. Cobb, of Los Angeles, Cal., for appellee.

Before STEPHENS, HEALY and BONE, Circuit Judges.

STEPHENS, Circuit Judge.

Quinn and Byram, County Tax Officers, appeal from the order of the bankruptcy court affirming its jurisdiction under Section 64, sub. a of the Bankruptcy Act, 60 Stat. 330, 11 U.S.C.A. § 104, sub. a(4), to redetermine the assessed valuation made by the County Board of Equalization of the bankrupt's personalty for county property tax purposes. The bankruptcy court was entertaining a petition for the reorganization of Aero Services, Inc., under the bankruptcy law. For convenience, we sometimes refer to petitioner as "Aero" and, notwithstanding a petitioner in a reorganization proceeding is not strictly speaking a bankrupt, we sometimes refer to petitioner herein as the "bankrupt".

Aero Services, Inc., owned the taxed personalty and also certain real property, all situated in the county of Los Angeles, on the first Monday in March which is the tax and lien date in California. Calif.Rev. & Tax Code, Sections 405, 2192, 117, 2189. A verified declaration of the property for tax purposes was made and filed with the County Assessor on May 14, 1946, showing the estimated taxable value of the personalty as of the first Monday in March, 1946. Soon thereafter and prior to the first Monday in July, 1946, the County Assessor fixed the value of the personalty at the estimated figure of the declaration, $355,710.

Aero Services, Inc. initiated the reorganization proceedings on June 3, 1946, by filing its petition under Section 322 of Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 722. Aero was authorized to retain possession of the property. On July 1, 1946, the County Board of Equalization commenced its review of all assessments within the county for purposes of correcting any errors of the County Assessor and for purposes of equalizing the assessments. Neither Aero nor anyone for Aero took advantage of the law giving the owner of property the right to file an application, or appear at the public hearings before the Board to request a reduction in or a redetermination as to the personalty assessment. A tax bill was sent Aero based upon the assessment and the tax, in accord therewith, became due on November 1, 1946, and delinquent on December 5, 1946. On December 6, 1946, Aero filed a petition praying that an order be made requiring the County Assessor and the County Tax Collector to show cause why the bankruptcy court should not redetermine the tax assessment value of the personalty, claiming the assessment to be grossly excessive. The order issued and the county officers responded by objecting

to the jurisdiction of the bankruptcy court. The referee, after a hearing, overruled the objections and the bankruptcy court affirmed the order.

The issue is whether the bankruptcy court had jurisdiction to redetermine the assessed valuation of the bankrupt's personalty for county tax purposes and to fix the tax accordingly.

The bankruptcy court resolved the issue of its jurisdiction in the affirmative, upon its interpretation of Section 64, sub. a(4) of the Bankruptcy Act, 11 U.S.C.A. § 104, sub. a(4), which we quote in part: "* * * In case any question arises as to the amount or legality of any taxes, such question shall be heard and determined by the court".

The court cited Lyford v. City of New York, 2 Cir., 137 F.2d 782, 786, in which the judge discusses Arkansas Corporation Commission v. Thompson, 313 U.S. 132, 61 S.Ct. 888, 85 L.Ed. 1244, and states that in his opinion the effect of the Arkansas-Thompson case is to "restrict the court to finding if the tax is legally due and to deny it power to review the action of a *quasi-judicial taxing* body [emphasis ours] in setting, after due hearing, a valuation of property for tax purposes." The bankruptcy court felt that the real basis of the Arkansas-Thompson [1] decision was that the Arkansas commission, with the bankruptcy trustee participating in the proceeding, acted in a quasi-judicial capacity in settling the tax. The trustee not having appealed, and the state tax proceedings having been concluded prior to the bankruptcy, the determination had become res judicata. In re Monongahela Rye Liquors, Inc., et al., 3 Cir., 141 F.2d 864, was relied upon.[2]

---

[1] Arkansas Corporation Commissioner, et al. v. Thompson, Trustee, 313 U.S. 132, 61 S.Ct. 888, 891, 85 L.Ed. 1244, concerned the matter of taxes of a railroad under reorganization as provided for in § 77, Bankruptcy Act of 1933, 11 U.S. C.A. § 205. No appeal, as provided for by the state statute, was taken to the state court and time for appeal lapsed. The bankruptcy court was then petitioned to redetermine the assessment under authority of § 64, sub. a (4) Bankruptcy Act. In the course of the court's opinion it is said: " * * * indicates that taxpayers in bankruptcy or reorganization are intended to have the extraordinary privilege of two separate trials, one state and one federal, on an identical issue of controverted fact—the value of the property taxed. Manifestly, whether or not taxes are 'legally due and owing' to a state depends upon the valid laws of that state. Ad valorem taxes depends upon a determination of value. The governmental function of fixing the value for tax purposes has rarely, if ever, been a judicial function. The 'legality' of the action of Arkansas in entrusting the determination of value to its Corporation Commission is not challenged here, as of course it could not be. If the Commission properly found the value of the property, the 'amount' of the taxes is not in question. For it is not asserted that the Commission made an improper arithmetical computation in applying the legal tax rate to the determined property value. It is in this respect, as well as with regard to the dissimilar duties and functions of the state administrative agencies involved, that this case differs from that of [State of] New Jersey v. Anderson, 203 U.S. 483, 27 S.Ct. 137, 141, 51 L.Ed. 284, upon which the trustee here strongly relies." See also Gardner, Trustee, v. State of New Jersey, 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. 504, and Kelly v. United States, 9 Cir., 90 F.2d 73, 76.

[2] Quoting from 141 F.2d at page 868 of the In re Monongahela case: "The view we take of the decision in the Thompson case is that where, after a hearing, a quasi-judicial body, thereunto duly empowered, determines the amount of a tax due, with the right on the part of the taxpayer to a judicial review of the determination, all conformable with the requirements of due process, such determination, upon becoming final by operation of law, is conclusive upon a court of bankruptcy save for mathematical error in the computation of amount of the tax or legal error in its assessment. * * * The question in any instance, therefore, is whether the circumstances necessary to justify an exercise of bankruptcy's power to redetermine a tax claim are present. We think they are in the instant case. The taxpayer having failed to file a return, the tax assessments against it were based upon estimated 'settlements' arbitrarily made by the State's Department of Revenue without hearing the taxpayer. The pertinent Pennsylvania statute, viz., the Fiscal Code of 1929, P.L. 343, as amended by the Act of February 2, 1937, P.L. 3, 72 P.S. §§ 1-1804, provides that, in case a taxpayer fails to file timely a report necessary to enable the Department of Revenue to settle a tax, the Department may make an estimated settlement wherein a fifty per

The court, in our case, concluded [75 F. Supp. 347, 353]: "In the instant case the time for objection to the assessment before the Board of Equalization had not expired at the time of the within bankruptcy proceeding. There had been no hearing, finding or final order on the tax at the time of bankruptcy and it therefore appears that the determination of the amount of tax may be had in those pending bankruptcy proceedings, and accordingly this Court determines that the objection to the jurisdiction should be overruled."

It is implicit in the bankruptcy court's comment upon the Arkansas-Thompson case that that court was of the opinion that some phase of an adversary appellate hearing must have been held, with the taxpayer participating, before the bankruptcy court is precluded from exercising the power to reassess the property and finally fix a tax. That is, res judicata depends upon the participation of the taxpayer in a hearing before the Board of Equalization or at least this is so when the bankruptcy proceedings have been initiated before the assessment has been finally determined by the Board.

Appellant thinks the Arkansas-Thompson case cannot be construed so broadly. He thinks the point controlling in the cited case is that an assessment is res judicata after a judicial review of the administrative act, whether or not the taxpayer has actually appeared, if, in fact, there is provision in the law for such review and the taxpayer has had a full right to appear and participate in such review. If by choice he does not avail himself of it, the assessment is final. We think the latter construction the correct one under Arkansas v. Thompson, supra, and as well, Gardner, Trustee, v. State of New Jersey, 329 U.S. 565, at 578, 579, 67 S.Ct. 467, 91 L.Ed. 504.

In our opinion, the applicable procedure adopted for assessment of property taxes in California constitutes a quasi-judicial determination. The assessment procedure functions from March to July and in some cases into August. Between the first Mondays in the months of March and July the County Assessor is required to ascertain and assess all taxable property within his jurisdiction as of the first Monday in March. Sec. 405.[3] Between the first Monday in March and the last Monday in June each taxpayer is required to file with the County Assessor a verified declaration of his taxable property. Sec. 441. In addition, the County Assessor is authorized to subpoena and examine any taxpayer with respect to any statement disclosing taxable property. Sec. 454. Upon completion of the assessment roll on or before the first Monday in July, by the assessor, he delivers it to the County Board of Equalization. Secs. 616, 617. The County Board of Equalization, upon receipt of the roll, gives legal notice by publication of the roll's completion and the time at which the board will meet to equalize assessments. Sec. 1601. Taxpayers desiring changes in their assessments must, either in person or by an agent, file verified written applications for such changes, setting forth the supporting facts. Applicants may be present at stated hearing and must be examined under oath by the Board concerning the value of their property, if they so desire. Secs. 1607, 1608. The Board may, in the course of its hearing of any application, subpoena witnesses and take evidence and the Assessor and his deputies must be present to present evidence as needed. Secs. 1609, 1610. The session of the Board commences on the first Monday in July and continues not later than the third Monday in July. Sec. 1603. For the purpose of equalizing assessments the Board may increase or decrease individual assessments. Sec. 1605. Following the close of the Board's session the corrected assessment roll is de-

---

cent penalty is included (§ 804). From any estimated settlement no right to review or appeal is allowed. * * * For the most part, the tax claims in the instant case are based upon such estimated settlements. We think it is plain that the referee's hearing and determination of the amount of tax actually due did not involve a second trial of a controverted fact, such as the exercise of the power entailed in the Thompson case. We are, therefore, of the opinion that, under the circumstances here shown, the rule of the Anderson case is applicable and that the referee's redetermination of the Commonwealth's tax claims was a justifiable exercise of bankruptcy's power."

[3] All statutory citations by numbers only are to the California Revenue and Taxation Code.

livered to the County Auditor for totaling of the valuations thereon. Secs. 1614, 1646.

We think the procedure just outlined provides for a valid and constitutional determination, quasi-judicial in nature, whether or not the taxpayer petitions for a redetermination and whether or not he appears. We also think the fact that the reorganization proceeding antedated the Board of Equalization's hearings is of no consequence. See Hagar v. Reclamation Dist. No. 108, 111 U.S. 701, 710, 4 S.Ct. 663, 28 L.Ed. 569. The bankruptcy court in its opinion correctly stated the law, though it did not follow it, where it said: "The minimum requirement apparently would be a determination by a quasi-judicial body in conjunction with a quasi-judicial hearing, or at least the right to such hearing." See Commonwealth of Pennsylvania v. Aylward, 8 Cir., 154 F.2d 714; Luce v. City of San Diego, 198 Cal. 405, 245 P. 196; Dawson v. Los Angeles County, 15 Cal.2d 77, 81, 98 P.2d 495. The facts present a situation comparable to a judgment by default, one which is a proper basis for a plea of res judicata and estoppel. In re Jacobson's Guardianship, 30 Cal.2d 326, 334, 182 P.2d 545; Fitzgerald v. Herzer, 78 Cal.App.2d 127, 131, 132, 177 P.2d 364.

In People v. Goldtree, 44 Cal. 323, 325, the court holds that "* * * The Board of Equalization, in passing on the question whether an assessment is too high or too low, acts in a judicial capacity, and its decision is an adjudication, and as clearly so as a judgment for the recovery of a tax * * *". In Los Angeles Gas & Electric Co. v. County of Los Angeles, 162 Cal. 164, 121 P. 384, 386, 9 A.L.R. 1277, the function of the Board is again discussed: "* * * Upon such hearing, it is the duty of such board to determine the value of the property under consideration for assessment purposes upon such basis as is used in regard to other property, so as to make all the assessments as equal and fair as is practicable. In discharging these duties, the board is exercising judicial functions, and its decision as to the value of the property and the fairness of the assessment, so far as amount is concerned, constitutes an independent and conclusive judgment of the tribunal created by law for the determination of that question, which abrogates and takes the place of the judgment of the assessor upon that question. * * *"

When the Board, sitting as a Board of Equalization, determined the assessment in question, it became final and conclusive. The recent case of Universal Consolidated Oil Co. et al. v. Byram, County Tax Collector, 25 Cal.2d 353, 362, 153 P.2d 746, 751, supports this view: "* * * As appears from the numerous authorities cited in the forepart of this opinion, the respective county board of equalization is the fact-finding body designated by law to remedy excessive assessments (Cal.Const. art. XIII, § 9), and when that tribunal, after due hearing and within the limits of reasonable discretion, makes its findings on the facts, such decision is final and conclusive. * * *" And in Los Angeles Gas & Electric Co. v. County of Los Angeles, supra, "* * * The law necessarily leaves the determination of the question of fact of value to certain officers, and when it appoints tribunals for that purpose, as in this state primarily the assessor, and, for purpose of review, the board of supervisors, acting as a county board of equalization, the conclusion of those tribunals on such a question of fact constitutes a judgment that is not collaterally assailable in the courts. This is the universal rule, and it has been so held in this state."

It is suggested that our case is ruled by State of New Jersey v. Anderson, 203 U.S. 483, 27 S.Ct. 137, 51 L.Ed. 284, but the difference which is pointed out in our quotation from the Arkansas-Thompson case in note 1 applies to our case as well. That is, in Arkansas-Thompson and our case there is provision for a quasi-judicial hearing whereas in New Jersey v. Anderson there is not. See In re Ingersoll Co., 10 Cir., 148 F.2d 282.

The bankruptcy court erred in not dismissing the petition for redetermination, and the proceeding is remanded with instruction to dismiss the petition for redetermination in accord with this opinion.

Reversed and remanded.